[No. 21145.   In Bank.—March 9, 1895.]

# THE PEOPLE, RESPONDENT, v. H. M. LEONARD, APPELLANT.

CRIMINAL LAW—EMBEZZLEMENT—EVIDENCE—PROOF OF CORPORATION DE
FACTO.—Where a defendant is charged with embezzlement of moneys
as an officer, manager, and servant of a banking corporation "duly
created, organized, and existing under and by virtue of the laws of the
state of California," proof that such corporation existed as a corporation
de facto, claiming in good faith to be a corporation organized under the
laws of California, and doing business as such, is sufficient to sustain
the indictment.

ID.—SUFFICIENCY OF ARTICLES OF BANKING CORPORATION—FAILURE TO
STATE AMOUNT OF CAPITAL STOCK SUBSCRIBED—CHANGE OF CODE.—
The articles of incorporation of a banking corporation executed and
filed prior to the amendment of 1876, of section 290 of the Civil Code,
were not required to contain a statement of the number of shares of
the capital stock subscribed, or by whom.

ID.—PROOF OF INCORPORATION—INSTRUCTION—MODIFICATION—CONFLICT.—
An instruction to the effect that the prosecution must prove a corpora-
tion duly formed, organized, existing, and doing business under the
laws of the state of California, is not in conflict with a modification
thereof to the effect that if the jury find that the corporation existed
as a de facto corporation at the time of the alleged offense, it was a
corporation duly formed, organized, existing, and doing business, nor
in conflict with another instruction solely relating to the sufficiency of
proof of a corporation de facto.

ID.—EFFECT OF PROOF OF CORPORATION DE FACTO.—When the proof shows
such facts as the code designates as sufficient to constitute a corpora-
tion de facto, it is for all the purposes of the action to be treated as a
corporation duly formed, and the legality of its organization cannot be
questioned.

ID.—LIABILITY OF OFFICERS OF DE FACTO CORPORATION—EMBEZZLEMENT
BY OFFICER DE FACTO.—Any officer who in fact acts as an officer of a
corporation de facto is subject to all the liabilities and penalties im-
posed upon directors and officers duly elected by a corporation de jure;
and a de facto officer of a de facto corporation is liable criminally for the
embezzlement of funds in his hands.

ID.—CONSTRUCTION OF INSTRUCTIONS—PROVINCE OF JURY—ADMISSIONS OF
DEFENDANT.—The whole of an instruction to the jury upon any given
subject must be taken together; and where it appears that an instruc-
tion to the jury explicitly charged that they were the exclusive
judges of the sufficiency of the evidence, and of the credibility of
witnesses, and informed the jury that if they found the company had
performed certain enumerated acts then it became a corporation de
facto, and that if they found that the defendant during the latter years
of the existence of this de facto corporation, as a business association,
acted as its manager, and in fact had control of its funds and managed

its business, etc., then the admissions and statements made in the course of his conduct as manager may be considered, the instruction, taken as a whole, does not invade the province of the jury.

ID.—EVIDENCE—ENTRIES IN CASH-BOOK UNDER DIRECTION OF DEFENDANT—INSTRUCTION.—The entries in a cash-book kept in the bank by a book-keeper under the direction of the defendant, as manager of the bank, are *prima facie* evidence of the balances of cash on hand at the several dates at which it was important to show such balance, and it is proper to instruct the jury that such entries are evidence tending to show the cash on hand at such dates.

ID.—SUBSTITUTION OF WORTHLESS SECURITIES FOR FUNDS OF BANK.—Where an officer in charge of the funds of a bank takes therefrom such funds, and deposits in place thereof securities known by him to be worthless, and appropriates to his own use the funds thus taken, he is guilty of embezzlement.

ID.—INSTRUCTIONS—UNSECURED NOTE OF INSOLVENT MANAGER—FRAUDULENT APPROPRIATION OF FUNDS—INDEPENDENT EVIDENCE.—An instruction that if the defendant, knowing his insolvency, took large sums of money from the vaults of the bank, and executed therefor an unsecured promissory note to the bank, such taking of the money was a fraudulent appropriation falling within the definition of embezzlement, must be taken in connection with other instructions to the effect that the making of the note was not of itself a criminal act, and that the jury must find from other evidence independent of the notes that money was taken by defendant from the bank and appropriated contrary to his trust, and, when thus taken together, the instructions were not detrimental to the defendant.

ID.—EVIDENCE—OFFICERS OF CORPORATION—RECORDS OF BANK—ORAL PROOF.—Where the records of the bank showing the election of officers and adoption of by-laws were excluded by the court upon objection by the defendant upon the ground that the bank was not legally organized as a corporation *de facto*, it is proper for the prosecution to show by oral testimony who were in fact the acting officers of the corporation.

ID.—IMPANELMENT OF GRAND JURY—EXCUSING OF JURORS—DISCRETION AS TO FILLING SPECIAL PANEL—VENIRE.—Where in the drawing and impaneling of a grand jury out of thirty names drawn from the jury-box, after the excusing of those who offered satisfactory excuses, and the challenging of those who are shown by the evidence to be incompetent to serve as jurors, nineteen names are not left, it is discretionary for the court either to draw other names from the grand jury box and issue summons, or to issue a venire to the sheriff to summon additional persons to complete the panel, and there is no abuse of discretion in causing sufficient persons to be summoned by special venire to complete the grand jury.

ID.—TIME OF SERVICE OF GRAND JURY.—The fact that a grand jury was organized in November, 1893, and found an indictment against the defendant in January, 1894, does not render the indictment invalid, where it does not appear that the jurors for 1894 had been selected and returned at the date of the finding of the indictment, and the jury of 1893 were properly continued until other jurors were selected and returned in 1894.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial, and from an order denying a motion in arrest of judgment.

The facts are stated in the opinion of the court.

*H. V. Morehouse, Hiram D. Tuttle,* and *John E. Richards,* for Appellant.

When the articles of incorporation were offered they were insufficient; they were not articles at all, and the court so held, and such is the law. (*Mokelumne etc. Co.* v. *Woodbury,* 14 Cal. 424; 73 Am. Dec. 658; *Harris* v. *McGregor,* 29 Cal. 124; *McCallion* v. *Hibernia etc. Soc.,* 70 Cal. 163; *People* v. *Selfridge,* 52 Cal. 331; *People* v. *Montecito Water Co.,* 97 Cal. 278; 33 Am. St. Rep. 172.) Proof of the existence of the corporation was a material fact. (*Fresno Canal etc. Co.* v. *Warner,* 72 Cal. 379; *United States* v. *Amedy,* 11 Wheat. 392; *People* v. *Frank,* 28 Cal. 507; Civ. Code, sec. 358.) The court erred in modifying the instruction that the prosecution must prove a corporation duly formed, organized, and existing, etc., by stating that if they should find that the corporation existed as a *de facto* corporation, it was a corporation duly formed, organized, and existing as much as a corporation duly formed is a corporation *de jure.* This was contradictory and misleading. (Morawetz on Corporations, 2d ed., sec. 776.) When an instruction is calculated to mislead the jury the judgment should be reversed, and the rule even goes further, if the jury may have been misled. (*People* v. *Barry,* 63 Cal. 62; *People* v. *Edson,* 68 Cal. 549; *People* v. *Monahan,* 59 Cal. 389; *Slaughter* v. *Fowler,* 44 Cal. 195.) When the instructions are conflicting the judgment should be reversed. (*People* v. *Simons,* 60 Cal. 74; *People* v. *Valencia,* 43 Cal. 552; *Harrison* v. *Spring Valley etc. Co.,* 65 Cal. 376; *Chidester* v. *Consolidated etc. Ditch Co.,* 53 Cal. 56; *Bank of Stockton* v. *Bliven,* 53 Cal. 708; *People* v. *Campbell,* 30 Cal. 312.) And an erroneous instruction is not

cured by a correct statement of the law in another part of the charge. (*People* v. *Wong Ah Ngow*, 54 Cal. 151; 35 Am. Rep. 69; *People* v. *Valencia, supra; Chidester* v. *Consolidated Ditch Co., supra; People* v. *Campbell, supra.*)  The court erred in instructing the jury that "any director or officer who, in fact, has acted as such in the conduct of the business of such *de facto* corporation, is subject to all the liabilities and penalties attaching to directors and officers duly elected by a corporation *de jure*," etc., as there must exist a corporation *de jure* to have a *de jure* office, and there can be no *de facto* officer unless there is a *de jure* office.  (*Norton* v. *Shelby Co.*, 118 U. S. 425; Mecham on Public Officers, secs. 324–26.)  Entries in the books of a corporation are not admissible against a stockholder in a criminal case if the entries are not in the handwriting of the defendant. (*Lang* v. *State*, 97 Ala. 41; *People* v. *Severance*, 22 N. Y. Supp. 91; 67 Hun. 182; Wharton on Criminal Evidence, sec. 626; *Rudd* v. *Robinson*, 126 N. Y. 113; 22 Am. St. Rep. 816; 1 Roscoe on Criminal Evidence, 85; *Powell* v. *Conover*, 26 N. Y. Supp. 1028; 75 Hun, 11.) All the evidence of any transactions, or any books or entries made on the ninth day of May, 1893, being subsequent to the alleged offense, were absolutely inadmissible.  (*People* v. *Hill* (Cal., Nov. 28, 1893), 34 Pac. Rep. 854.)  The instruction that "such taking of the money was a fraudulent appropriation, and falls within the definition of embezzlement," was erroneous, as it took from the jury the question of fact as to whether the appropriation was a fraudulent appropriation. (*Jaines* v. *State*, 32 Tex. Crim. App. 473; Const., art. VI, sec. 19; *People* v. *Carillo*, 54 Cal. 64; *People* v. *Walden*, 51 Cal. 588; *Stone* v. *Geyser*, 2 *W. Co.*, 52 Cal. 315.)  The grand jury was illegal, as the members having been regularly drawn, the court had no jurisdiction to discharge two of their members and select others.  (Code Civ. Proc., sec. 242; *Bruner* v. *Superior Court*, 92 Cal. 239; *State* v. *Symonds*, 36 Me. 132; *Doyle* v. *State*, 17 Ohio, 222; *Stevens* v. *State*, 3 Ohio St. 456; *Finley* v. *State*,

61 Ala. 201; *Couch* v. *State*, 63 Ala. 163; *Clare* v. *State*, 30 Md. 165; *Wilburn* v. *State*, 21 Ark. 201; *Whitehead* v. *Commonwealth*, 19 Gratt. 640; *McQuillen* v. *State*, 8 Smedes & M. 587; *State* v. *Williams*, 5 Port. 130; *Dutell* v. *State*, 4 G. Greene, 125; *People* v. *Thurston*, 5 Cal. 69; *State* v. *McNamara*, 3 Nev. 70; *McElvoy* v. *State*, 9 Neb. 163; *Stokes* v. *State*, 24 Miss. 623.) A grand jury drawn and impaneled in 1893 had no authority to act and find an indictment in 1894, as did this jury. (Code Civ. Proc., secs. 204, 205.)

*District Attorney V. A. Scheller*, and *Assistant District Attorney E. E. Cothran*, for Respondent.

Even if the articles of incorporation are defective, the defendant, being a director, manager, and agent for a banking institution, having in his care and possession the money of that institution in trust, as the evidence clearly shows these facts, would be estopped from denying his agency. (*Ex parte Hedley*, 31 Cal. 108; *People* v. *Treadwell*, 69 Cal. 226.) Moreover, a corporation cannot be attacked in the manner which was attempted by the defendant at bar. (Beach on Corporations, secs. 13, 14, 106, 135, 182; Cook on Stock and Stockholders, secs. 637, 713; Boone on Corporations, 135, 140; Morse on Banking, secs. 80, 83, 98, pp. 191, 198, 199; *Oroville etc. R. R. Co.* v. *Plumas County*, 37 Cal. 354, 361; *People* v. *La Rue*, 67 Cal. 530; *First Baptist Church* v. *Branham*, 90 Cal. 22.) Besides, evidence that a corporation is acting as such is sufficient proof of its existence in a criminal cause. (*People* v. *Frank*, 28 Cal. 508; *People* v. *Hughes*, 29 Cal. 258; *People* v. *Schwartz*, 32 Cal. 161; *People* v. *Ah Sam*, 41 Cal. 645; *People* v. *Barric*, 49 Cal. 342.) The cashbook in which had been entered the balances of coin in the bank was certainly material and competent. (*Neilson* v. *Crawford*, 52 Cal. 248; *McLellan* v. *Bank of California*, 87 Cal. 575; Morse on Banks and Banking, 3d ed., sec. 295, n. pp. 510, 511; *Union Bank* v. *Knapp*, 3 Pick. 96, 100; 15 Am. Dec. 182; *Watson* v. *Phœnix Bank*, 3 Met. 217, 220, 221; 41 Am. Dec. 500; Civ. Code, sec.

378, and notes, Deering's Annotation; *People* v. *Throop,* 12 Wend. 183; Abbott's Trial Evidence, pp. 39, 46–53; ch. VIII, Books and Papers.)  The proposition that the court erred in denying defendant's motion to set aside the indictment upon the claim that the grand jury was an illegal body, and that the lower court did not impanel the grand jury in compliance with law, is untenable, as the provisions of the code were carefully followed in this connection.  (Code Civ. Proc., secs. 226, 241–43; Pen. Code, secs. 894–901.)  The contention of the appellant, that the indictment is illegal, for the reason that it was found in 1894 by a grand jury impaneled in the latter part of the previous year, has been adversely decided by this court.  (*In re Gannon,* 69 Cal. 541.)

SEARLS, C.—The appellant, H. M. Leonard, was convicted of the crime of embezzlement, and adjudged to suffer imprisonment in the state prison for the term of three years.

He appeals from the judgment, from an order denying his motion for a new trial, and from an order refusing to arrest the judgment.  The indictment avers that the defendant, on the eighth day of May, 1893, at the county of Santa Clara, state of California, was " an officer, manager, and servant of the Bank of Santa Clara, a corporation duly created, organized, and existing under and by virtue of the laws of the state of California."

The indictment then proceeds to charge in apt and usual language that there came into the hands of said defendant as such officer, etc., the sum of eight thousand three hundred and eighty-four dollars and seventeen cents, which he then and there feloniously appropriated to his own use, etc.

The first specification of error by appellant relates to the modification of an instruction asked by defendant and given with an addition made thereto by the court on its own motion.

The instruction is as follows:

" I instruct you that, in order to sustain the charge herein, the prosecution must prove beyond a reasonable doubt—that is, to a moral certainty—that the Bank of Santa Clara County was, at the time of the alleged offense, a corporation duly formed, organized, and existing and doing business under the laws of the state of California, and doing business at Santa Clara, in this state; and that on the eighth day of May, 1893, and before that date, that the defendant was the manager or servant of said Bank of Santa Clara County, and as such manager or servant had during that time in his possession, or under his control, the moneys belonging to said corporation mentioned in the indictment." The court gave this with the following modification, to wit: " But, if you find from the evidence that the persons named in the certificate of incorporation given in evidence, organized as a corporation and entered upon the business named in the certificate, and that they and their successors continued to conduct business as a banking corporation, under the name of the Bank of Santa Clara County, until after the eighth day of May, 1883, then I instruct you that, for the purpose of this case, the Bank of Santa Clara County was at the time of the alleged offense a corporation duly formed, organized, existing, and doing business." To which modification of said defendant's requested instruction defendant then and there duly excepted.

It will be observed that the instruction as asked by the defendant involved, as an essential element, the necessity of a legally organized corporation, that it should be, in the language of the instruction, " a corporation duly formed, organized, and existing, and doing business at Santa Clara, in this state."

The addition to the instruction in effect informed the jury that a *de facto* corporation, if they found such to exist, was for the purposes of the case sufficient. It is proper to a correct understanding of the question to say that the prosecution offered in evidence articles of incorporation of " The Bank of Santa Clara County,"

duly executed and filed on the twenty-eighth day of May, 1875.

To the introduction of such articles of incorporation counsel for defendant objected, upon the ground that they were incompetent, irrelevant, and immaterial, and inadmissible.

After much argument, during which it appeared that the alleged defect consisted in the omission from the articles of the requirements of the seventh provision of section 290 of the Civil Code, by failing to state the amount of the capital stock subscribed and by whom.

A long argument seems to have occurred over the question, during which the court below expressed the opinion that the articles were insufficient to constitute a corporation *de jure,* but that while defective they might be introduced as one step in the proofs of the existence of a corporation *de facto.* The objection was thereupon overruled, the articles admitted in evidence, and proof was thereafter received tending to show that the bank acted and did business as a corporation, and defendant acted as a director, manager, and agent thereof. The fact was that in 1875, when the articles of incorporation of the Bank of Santa Clara County were executed and filed, the statute did not require a statement in such articles of the number of shares subscribed, or by whom. (Amendment to Codes, 1873–74, p. 816.) Section 290 of the Civil Code was again amended in 1876, so as to include the clause to which we have referred. (Amendments to Codes, 1875–76, p. 70.)

Counsel and the court overlooked the fact of these changes in the code, and the cause was tried upon the theory that the corporation was never legally organized. The error in this respect consisted in improperly sustaining the objection made by counsel for defendant, and he should not be heard to complain.

There being evidence to sustain the instruction as modified, it was proper to give it in any event.

It has repeatedly been held that proof that a corpora-

tion was acting as such is sufficient. (*People* v. *Frank,*
28 Cal. 507; *People* v. *Hughes,* 29 Cal. 258; *People* v.
*Schwartz,* 32 Cal. 161; *Oakland Gas etc. Co.* v. *Dameron,*
67 Cal. 663.) It is also held in *People* v. *Schwartz, supra,*
that, if the indictment avers that the company is a
corporation, proof of the existence of the corporation *de
facto* will support the averment.

To hold that one who has been an officer, agent, or
servant of a company acting as a corporation can, upon
discovering that by reason of some defect or oversight
in incorporating the company has not become a corpora-
tion *de jure,* plunder its treasury, and go scot free, would
be to offer a premium for wrongdoing. "In reason
whenever a man claims to be a servant, while getting
into his possession by force of this claim the property
to be embezzled, he should be held to be such on his
trial for the embezzlement. . . . . When a man has
received a thing of another under the claim of agency
he cannot turn round and tell the principal asking for
the thing: Sir, I was not your agent in taking it, but a
deceiver and a scoundrel." (Bishop on Criminal Law,
sec. 397; *People* v. *Treadwell,* 69 Cal. 226; *Ex parte Hedley,*
31 Cal. 108.)

Our Civil Code, section 358, has embodied the rule in
the following words: " The due incorporation of any
company claiming in good faith to be a corporation
under this part, and doing business as such, or its right
to exercise corporate powers, shall not be inquired into,
collaterally, in any private suit to which such *de facto*
corporation may be a party; but such inquiry may be
had at the suit of the state on information of the attor-
ney general."

Appellant objects to the fourteenth instruction given
by the court, as being in conflict with the instruction
hereinbefore set out and given in a modified form.

This fourteenth instruction is too lengthy to be here
set out in full. In it the court gives the definition of
embezzlement, the nature of the charge against the de-

fendant as specified in the indictment, and then proceeds as follows:

"It appears in the certificate of incorporation under which it is claimed the association therein named commenced business as a banking corporation, that it was not sufficient to entitle the directors therein named, or the stockholders, or their successors rightfully to conduct a banking business; but if you find from the evidence that the directors named in this defective certificate entered upon the business named in the certificate, and that they and their successors continued to conduct business as a banking corporation under the name of the Bank of Santa Clara County, then it became and was a corporation *de facto*, that is, a corporation in fact though not so in right," etc. The instruction then proceeds to say that any officer or director who in fact has acted as such is subject to the liabilities and penalties of like officers of a *de jure* corporation, etc.

The last instruction is not in conflict with the former as modified by the court. The conflict, if any, was in the former instruction as asked, and that portion added to it by the court. But this is apparent, not real. When the proofs show such facts as the code designates as sufficient to constitute a corporation *de facto* it is for all the purposes of an action of this character to be treated as a corporation. It is for such purpose a *corporation duly formed;* and the legality of its organization cannot be questioned. When, therefore, the court instructed the jury, as it did in effect, that it devolved upon the prosecution to prove a corporation duly formed, organized, and existing under the laws of the state of California, but that if the persons named in the certificate performed certain acts (naming such as are essential to constitute a corporation *de facto*), it was a corporation duly formed, etc.; it gave a correct exposition of the law as applicable to the case. The third point made by counsel for appellant is based upon an instruction given by the court (No. 14) to the effect that, if the Bank of Santa Clara County was a *de facto*

corporation, any director or officer who in fact acted as such officer of such corporation "is subject to all the liability and penalties attending to directors and officers duly elected by a corporation *de jure*," etc. The contention of appellant is that there can be no *de jure* officer without a *de jure* office to be filled, and that section 504 of the Penal Code, which defines embezzlement, applies only to *de jure* officers.

The cases already cited, holding that in criminal cases proof that a corporation has acted as such is sufficient, are deemed sufficient upon the first branch of the question. As to the question of the necessity of proof that an officer is such *de jure*, it has been said there is no conflict in the authorities as to whether a *de facto* officer is liable criminally for embezzlement of funds in his hands. (*State* v. *Goss*, 69 Me. 22; *Fortenberry* v. *State*, 56 Miss. 286; *State* v. *Sellers*, 7 Rich. 368; *State* v. *McEntyre*, 3 Ired. 171; *Diggs* v. *State*, 49 Ala. 311; *Rex* v. *Barrett*, 6 Car. & P. 124.)

We have found no case holding that a *de facto* officer may not be punished for embezzlement equally with a *de jure* officer.

The fourth contention of appellant is founded upon an excerpt from the fourteenth instruction of the court; and the attempt to predicate an argument upon it, to support the theory that the court invaded the province of the jury in passing upon the facts, falls to the ground when taken in connection with the whole instruction.

In the former part of the same instruction the court has informed the jury that, if they found the company had performed certain enumerated acts, that then it became a corporation *de facto,* and then proceeded to say, that "If you find that the defendant, during the latter years of the existence of this *de facto* corporation as a business association, acted as its manager, and in fact had control of its funds and managed its business, and, in the course of such management, there came under his control before the eighth day of May, 1893, sums of money in excess of . . . . then the admissions

and statements made in the course of his conduct of the business as manager may be considered." In the same instruction the jury was explicitly informed that they were the exclusive judges of the sufficiency of the evidence to establish the facts which it tended to prove, of the credibility of witnesses, etc. When read together the instruction is proper.

The fifth point in favor of reversal is founded on that portion of the same instruction which reads as follows: "If from the evidence you find that in a certain book kept by the Bank of Santa Clara County entries showing the balance of cash on hand on May 6 and May 8, 1893, were made under and by the direction of the defendant, then I charge you that such entries are evidence tending to show the cash on hand on said dates."

There was evidence tending to show that the cashbook referred to in the instruction was kept in the bank; that it showed the cash receipts and disbursements; was kept by a book-keeper under the direction of defendant; that at the close of the day's business defendant would count the cash on hand and furnish a slip to the accountant, who entered the amount reported and balanced it. Defendant also pointed out the book to an expert accountant, soon after the failure of the bank, as one of the books essential to a knowledge of the finances of the bank, etc. It was *prima facie* evidence of the balances of cash on hand at the several dates at which it was important to show such balance. Being admissible in evidence, the instruction predicated upon it was proper.

The court further instructed the jury as follows:

"If, from all the evidence, you find that on the eighth day of May, 1893, the defendant knew that he was insolvent, and, knowing his insolvency, he took large sums of money from the vaults of the bank, and executed therefor his unsecured promissory note to the bank, I instruct you that such taking of the money was a fraudulent appropriation, and falls within the definition of embezzlement." This instruction must be read

in connection with another given at the request of defendant, in the following language:

"I further instruct you that the making, execution, and delivery of a promissory note on the part of the defendant in the sum of eight thousand three hundred and eighty-four dollars and seventeen cents is not in itself a criminal act, and that before you can convict the defendant you must find from the evidence, to your entire satisfaction, and beyond a reasonable doubt, that not only was the money actually in the Bank of Santa Clara County, but that the defendant took the said moneys out of the said bank, and gave his note in the sum of eight thousand three hundred and eighty-four dollars and seventeen cents therefor, contrary to his trust."

There were two other instructions given on the same subject, emphasizing the necessity of there being evidence, independent of the notes, of the taking by defendant of the money from the bank, and appropriating the same contrary to his trust.

When thus read together these instructions were not detrimental to the defendant.

There are authorities to the effect that where an officer in charge of the funds of a bank takes therefrom such funds and deposits in place thereof securities known by him to be worthless, and appropriates to his own use the funds thus taken, he is guilty of embezzlement, and no good reason is perceived why such is not the law. The pretense of giving in return, for funds thus taken by an officer, securities which are worthless and known to be so by him at the time is but an evasion, or attempt to evade, the conclusion following the wrongful act.

Numerous other points are made by appellant in relation to instructions given and refused. Those given by the court, taken together, contained a correct exposition of the law, and those asked by defendant and not given were either embodied in the instructions as given, or were erroneous as presented.

The several objections to the evidence need not be

mentioned in detail, as they involve no error calling for a reversal.

Most of them are founded upon objections to evidence, because secondary in character and not the best evidence of the facts proven. In these cases the prosecution had offered proper record evidence, which, upon the objection of defendant, was ruled out by the court.

The theory of defendant and of the court seems to have been that, as the bank was not legally organized, its records showing the election of officers, adoption of by-laws, etc., were not admissible. It therefore became necessary for the prosecution to show by oral testimony who were in fact the acting officers of the corporation, etc.

The evidence was sufficient to support the verdict, and the only other question calling for special mention is that presented by the motion to set aside the indictment.

The bill of exceptions upon which this motion was founded shows that one hundred and twenty-five persons were duly selected by the board of supervisors, pursuant to an order of the superior court, to serve as grand jurors for the year 1893, and certified to the county clerk of Santa Clara county.

The names of the persons so selected as grand jurors were deposited in a box by the clerk as by law provided.

On the fourteenth day of November, 1893, the superior court made an order requiring that a grand jury of thirty persons be drawn from the box, and summoned to be and appear on December 5, 1893.

The jury was duly drawn, and appeared and answered to their names, whereupon ten of the number, offering satisfactory excuses, were excused by the court.

The names of the remaining twenty persons were duly deposited in a box, from which nineteen names were drawn in the usual manner to serve as grand jurors.

Thereupon the persons so selected and drawn were questioned by the district attorney touching their qualifications as jurors, whereupon two of them, viz., Cyrus

Berry and W. E. Spencer, gave testimony tending to show that they were not assessed upon the last assessment-roll of the county for taxation.

Thereupon said Berry and Spencer were challenged by the district attorney and dismissed by the court as incompetent to serve, by reason that their names were not upon such assessment-roll.

The sole remaining name in the box was then drawn, viz: that of Simeon Holland, who was impaneled, making with those impaneled eighteen grand jurors.

The court then issued a special venire to the sheriff to summon two additional persons to complete the panel. They were duly summoned and one of them impaneled, thus completing the panel of nineteen grand jurors, by which grand jury the indictment herein was found and presented.

At the time the special venire issued there were ninety-five names in the grand jury box in possession of the county clerk.

The bill of exceptions further shows that at the hearing of the motion to set aside the indictment the assessment-roll of the county was produced and the name of W. E. Spencer, one of the jurors challenged and excused, was in fact upon said roll.

Two objections are made to the legality of the grand jury as organized:

1. That the members having been regularly drawn, the court had no jurisdiction to discharge two of the number and order others.

2. That a grand jury drawn and impaneled in 1893 had no authority to act and find an indictment in January, 1894.

In support of the first objection we are referred to section 242 of the Code of Civil Procedure, which provides that " when, of the persons summoned as grand jurors and not excused, nineteen are present, they shall constitute the grand jury."

The same section provides that if more than nineteen

are present their names shall be placed in a box and nineteen drawn, who " shall constitute the grand jury."

The argument is that as in the present instance there were present and not excused over nineteen persons, and as nineteen were drawn, they constituted the grand jury, and that no power existed in the court to thereafter excuse any of them.

This construction of the statute virtually has the effect of abrogating other provisions of the same code providing for the qualification of jurors.

Section 193 is as follows: " A person is competent as a juror if he be:

"1. A citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year, and of the county, or city and county, ninety days before being selected and returned;

" 2. In possession of his natural faculties, and of ordinary intelligence, and not decrepit;

" 3. Possessed of sufficient knowledge of the English language;

" 4. Assessed on the last assessment-roll of the county on property belonging to him."

The next section provides as follows: "A person is not competent to act as a juror:

" 1. Who does not possess the qualifications prescribed by the preceding section; or,

"2. Who has been convicted of malfeasance in office, or any felony or other high crime."

These sections provide the qualifications of all jurors, grand and trial alike. Manifestly, the supervisors upon whom the duty of selection devolves, who have no means of making a critical examination, and who must depend upon their general knowledge, will select many incompetent persons as jurors.

To illustrate: Frank Johnson, who was duly assessed for taxation, etc., was selected and regularly drawn and summoned as a grand juror in one of the counties of this state. Frank Johnson proved to be a woman. Aliens, nonresidents, persons under age, persons who

do not understand the English language, the deaf and other incompetents are frequently, by inadvertence, selected and drawn as grand jurors. One of two things must follow in such cases, either the court, upon an examination, has authority to discharge the incompetent, or the statute fixing the qualification of jurors becomes an idle declaration.

We are of opinion that the language of section 242 of the Code of Civil Procedure, which provides that the nineteen whose names are drawn " shall constitute the grand jury," must be taken and construed as meaning nineteen persons possessing the qualifications of jurors, as defined in sections 198 and 199 of the same code, and to this end the court before which such jurors are impaneled may, upon an examination which shows the jurors, or any of them, lack the necessary statutory qualifications, discharge such incompetents. This view is strengthened by the language of section 227 of the Code of Civil Procedure, which provides that " when there are not competent jurors enough present to form a panel the court may direct the sheriff . . . . to summon a sufficient number . . . . to complete the panel."

The juror W. E. Spencer, having, upon examination, declared that he was not assessed for taxation upon the last assessment-roll, was properly discharged. The court was authorized to act upon the evidence before it, and the fact that it afterward appeared that he was mistaken in his sworn statement did not have the effect of making the ruling erroneous. When all the persons summoned were exhausted without procuring a jury of nineteen it was discretionary with the court to either order other names drawn from the grand jury box, and summoned, or to issue a venire to the sheriff to summon additional persons to complete the panel. (Code Civ. Proc., secs. 226, 242.)

The court adopted the second course, and caused two persons to appear, one of whom was impaneled to complete the grand jury. In this course there was no abuse of the discretion confided to the court.

2. The fact that the grand jury was organized in November, 1893, and found the indictment against defendant in January, 1894, does not render it invalid. The Code of Civil Procedure, sections 204 to 211, both inclusive, provide for the selection of persons to serve as grand and trial jurors. Section 210 provides that: "The persons whose names are so returned shall be known as regular jurors, and shall serve for one year, and until other persons are selected and returned."

It does not appear from the record, and is not probable, that in fact the jurors for 1894 had been "selected and returned" at the date of the finding of the indictment. If they had not been, it was clearly proper to continue the jury of 1893 until such event happened.

Again, under the reasoning in *In re Gannon*, 69 Cal. 541, the action of the grand jury may be considered valid until discharged by the court, or by operation of law, and it was said the expiration of the year did not effect such discharge by operation of law.

There is nothing in *Bruner* v. *Superior Court*, 92 Cal. 239, in conflict with the views herein expressed.

What has been said of the motion to quash or set aside the indictment applies equally to the motion in arrest of judgment.

To dwell in detail upon each of the thirty-three points made by appellant in his brief would swell this already too long opinion beyond all reasonable limit.

It must suffice to say that a careful examination of each of them fails to convince us that the record discloses any error calling for reversal.

The serious errors committed by the court below were in favor of the defendant, and need not be further noticed.

The judgment and orders appealed from should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and orders appealed from are affirmed.

> GAROUTTE, J.,   McFARLAND, J.,
> HARRISON, J.,   VAN FLEET, J.

Rehearing denied.