[S. F. No. 4853.  In Bank.—September 23, 1907.]

THEODORE V. HALSEY, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

GRAND JURY—SELECTION AND RETURNING FOR SUCCEEDING YEAR—DISCHARGE.—Under section 210 of the Code of Civil Procedure, a grand jury whose names were regularly and legally drawn from the names in the grand jury box for a particular year, and who were regularly impaneled and organized as a grand jury during such year, and who had never been discharged by any order of the court, does not become discharged by operation of law, or rendered incapable of performing the functions of a grand jury, by the mere selection, listing, and returning of the grand jurors for the succeeding year.

ID.—LIMITATION ON LIFE OF JURY.—The provision of section 210 of the Code of Civil Procedure, that "The persons whose names are so returned shall be known as regular jurors, and shall serve for one year, and until other persons are selected and returned," only limits the time in which the persons selected shall serve for the purpose of the drawing and impanelment of a jury, and imposes no limitation

whatever upon the life of a jury, either grand or trial, once regularly drawn and impaneled.

APPLICATION for a Writ of Prohibition directed to the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Bert Schlesinger, William P. Humphreys, and D. M. Delmas, for Petitioner.

W. H. Langdon, District Attorney, William Hoff Cook, Assistant District Attorney, Francis J. Heney, and Charles W. Cobb, for Respondent.

THE COURT.—The petitioner seeks a writ of prohibition to restrain the superior court of the city and county of San Francisco from proceeding with his trial under a paper purporting to be an indictment, charging him with having committed a felony, which paper was presented and filed in said court as an indictment by a body of men assuming to act and acting as a grand jury of such city and county. It is claimed by petitioner that at the time of the finding and presentation of this indictment (March 20, 1907) this body of men did not constitute a grand jury at all, and that consequently the indictment is a nullity, and the superior court is without power to try him on the charge therein made.

Upon the oral argument it was admitted for all the purposes of this proceeding that this body of men was regularly and legally drawn from the names in the grand jury box for the year 1906, and regularly impaneled and organized as the grand jury of said city and county on the ninth day of November, 1906, and has never been discharged by any order of the court, but ever since such impanelment and organization has continued to act as the grand jury of the city and county, and has always been recognized by the superior court as such grand jury. Petitioner's claim here is that this grand jury was discharged by operation of law not later than February 12, 1907, and that by reason thereof the members have ever since constituted not a grand jury, but an illegal and unauthorized body of men, without power to perform any function of a grand jury.

The facts relied on as accomplishing this discharge of the grand jury by operation of law are as follows: On January 27, 1907, in conformity with section 204 of the Code of Civil Procedure, the judges of said superior court made an order designating the estimated number of grand jurors, and also the number of trial jurors, that would, in the opinion of the court, be required for the transaction of the business of the court and the trial of causes therein during the ensuing year, which number of grand jurors was one hundred and forty-four. Immediately after said order designating the estimated number of grand jurors had been made, said court selected and listed the grand jurors required by said order to serve as grand jurors in said superior court during the ensuing year, or until a new list should be provided, which list of persons so selected was at once placed in the possession of the county clerk, and said clerk, on receiving said list, filed the same in his office. On February 12, 1907, in conformity with section 209 of the Code of Civil Procedure, said county clerk wrote down the names contained on said list on separate pieces of paper, of the same size and appearance, and deposited the same in the grand jury box of said city and county. No proceedings have been had under section 241 of the Code of Civil procedure, in drawing, impaneling, or summoning any of the grand jurors from said list of grand jurors so selected in January, 1907, by the said court as aforesaid.

The claim of petitioner in this regard is necessarily based on the language of section 210 of the Code of Civil Procedure, for there is no other provision of our law, constitutional or statutory, that affords any basis for such a claim. Our constitution simply provides that "a grand jury shall be drawn and summoned at least once a year in each county." (Art. I, sec. 8.) Our Code of Civil Procedure provides (sec. 241) that every superior court, whenever in the opinion of the court the public interest requires it, must proceed to impanel a grand jury, and "in all counties there shall be at least one grand jury drawn and impaneled in each year." Nowhere, unless it be in said section 210 of the Code of Civil Procedure, is there any express limitation on the life of the grand jury so impaneled in pursuance of the authorization and requirement of the law, or any implied limitation, except such as may be implied from the requirement that at least one grand

jury must be impaneled in each year. When in obedience to this mandate a new grand jury is impaneled, the life of the former grand jury must necessarily end. Section 906 of the Penal Code, adopted as part of the original code in 1872, and never amended, provides that on the completion of the business before them the grand jury must be discharged by the court, "but whether the business is completed or not, they are discharged by the final adjournment of the court." This section was adopted at a time when we had terms of court. As under the constitution of 1879 we now have no such terms of court, and the superior court is always open for business, there is no such thing as a final adjournment of the court, and the quoted portion of the section is no longer effectual. It, however, assists somewhat in ascertaining the proper construction of section 210 of the Code of Civil Procedure, as we shall hereafter note.

Section 210 of the Code of Civil Procedure is contained in the article relating to the "selecting and returning jurors for courts of record" (art. III, chap. 1, title 3), the article having to do with the selection and placing in the general jury box of the county by the proper officers of the names of persons who may be drawn as required for actual service as jurors, both grand and trial, in the court. The preceding sections of the article having provided for the fixing by the court in January of each year of the estimated number of the grand and trial jurors that will be required for the transaction of the business of the court and the trial of causes therein during the ensuing year, the immediate selection of that number by the officers designated for that purpose, the placing of the lists of such persons in the possession of the county clerk, the filing of the same by that officer, the writing by him of the names on separate pieces of paper, and the deposit of such papers in the "grand jury box" and "trial jury box" respectively (secs. 204 to 209), sec. 210 provides: "The persons whose names are so returned shall be known as regular jurors, and shall serve for one year, and until other persons are selected and returned." Section 211 provides that "The names of persons drawn for grand jurors shall be drawn from the 'grand jury box' and the names of persons for trial jurors from the 'trial jury box'; and if, at the end of the year, there shall be the names of persons in either of the said jury boxes

who may not have been drawn during the year to serve, and have not served as jurors, the names of such persons may be placed on the list of jurors drawn for the succeeding year.'' Subsequent articles provide for the method of drawing from these boxes and summoning jurors, both grand and trial, for actual service in the court as they may be required and ordered by the court.    The claim of petitioner is that under section 210 the grand jury drawn and impaneled in the year 1906 from the persons selected, listed, and returned as grand jurors for that year, was discharged by operation of law upon the selection, listing, and returning of the one hundred and forty-four grand jurors for the year 1907.

This is not a new contention in this court.    Section 210 of the Code of Civil Procedure has existed in practically its present form ever since the adoption of the codes in 1872, and there has been no change in any other statutory provision applicable to jurors or juries that is material to the controversy here.    The precise question here presented as to the effect of the provisions of section 210 upon a grand jury regularly impaneled  from the list of the preceding year, was considered by this court in Bank in the year 1886 in the cases of *In re Gannon,* 69 Cal. 541, [11 Pac. 240], and *Kelly* v. *Wilson,* (Cal.) 11 Pac. 244.    In the Gannon case the court, in reply to the claim that the grand jury had ceased to exist for the reasons stated, and was not a legal body, said:—

"But while the statutory law fixes the time within the year for the court to order the selection and return of grand jurors liable to serve in the capacity of a grand jury, and limits the time in which they shall serve for the purpose of the drawing and impanelment of a grand jury, it prescribes no specific time for the drawing of the grand jury, or for its official existence after it has been drawn and impaneled.    These the law seems to have left to the judicial discretion of the court, for it provides that 'every superior court, whenever in the opinion of the court, the public interest must require it, may make an order directing a jury to be drawn' (Code Civ. Proc., sec. 241) ;  and when the proceedings put in motion by an order made for the purpose result in the drawing and impanelment of a grand jury, it is, as an organized body, in the exercise of its functions and in its official existence, subject to the control of a court that is 'always open,' and may

at any time, in the exercise of its jurisdiction, order it to be discharged. (Pen. Code, sec. 906.) A grand jury cannot dissolve itself (*Clem* v. *State,* 33 Ind. 418); and as the grand jury whose authority is challenged was not impaneled for any particular time prescribed by law, and has not been discharged by the court in which it is acting, it still exists as an original body, with power to perform its duties.''

Six of the seven justices concurred in this opinion. *Kelly* v. *Wilson,* (Cal.) 11 Pac. 244, which was a proceeding in prohibition by an indicted person to restrain the superior court from trying him, under precisely similar facts to those existing here, was decided on the authority of the Gannon case. It is strongly urged that the language above quoted was not necessary to the decision in the Gannon case. This is true in the sense that the case could have been disposed of on other grounds stated in the opinion. It is to be observed, however, that the case of *Kelly* v. *Wilson,* in which a decision upon this question was absolutely essential to a denial of the writ sought, was presented by the same counsel appearing in the Gannon case and was decided on the same day as the Gannon case. It is thus apparent that the two cases were under submission at the same time and were considered together, and practically constituted but one case in which the question before us was necessary to a decision. It thus appears that the court in these cases construed section 210 of the Code of Civil Procedure as only limiting the time in which the persons selected shall serve *for the purpose of the drawing and impaneling of a jury,* and as having nothing whatever to do with the life of a jury, either grand or trial, once regularly drawn and impaneled. No different construction has been given the section by any later case. *People* v. *Leonard,* 106 Cal. 302, [39 Pac. 617], certainly cannot be held to have so done. While the court in that case did observe that it did not even appear that the new jurors had been selected and returned, and that if they had not been it was clearly proper to continue the jury of the preceding year until such event happened, it also apparently adopted the reasoning of the Gannon case as one of the grounds of its decision.

The above-cited decisions as to the proper construction of the section under consideration, rendered twenty-one years ago, and it is fair to assume ever since followed by the courts of

the state, certainly should not be overruled unless they are clearly erroneous. No such situation is here presented. On the contrary, it is our opinion that the construction given the section by our predecessors was the correct one.

Neither section 210 nor any other section contained in the article of which it is a part assumes to deal with any impaneled jury, grand or trial. As to these, elaborate provision is elsewhere made. These sections relate exclusively to the setting apart of a sufficient number of persons eligible for jury duty, from whom may be drawn and brought into court from time to time so many as are required to render actual jury service in court. Section 210 refers only to the persons so set apart, and to them solely in that capacity,—i. e. in the capacity of persons set apart as a body from which a jury may be drawn when wanted. In that capacity all the persons so set apart are, by express provision of the section, known as "regular jurors," although many of them may never be drawn and summoned to attend upon the court at all. In that capacity alone they "serve for one year and until other persons are selected and returned" to take their places. When serving in that capacity some of them are drawn and summoned into court and impaneled on a jury, they there render an entirely different and additional service, which is regulated both as to manner of service and time of discharge by the provisions of the law relating to impaneled juries. Section 210 refers only to the two special classes from which jurors are to be taken, and it is only as members of those special classes, one for grand juries and the other for trial juries, that these so-called regular jurors are required to serve by that section. The term of service there mentioned is the term during which they serve in that capacity, the term during which they may be drawn or selected for actual jury service.

This is the only possible reasonable construction of the language of section 210 as to the term of service, in the connection in which it is used. The meaning thus given to the word "serve" is an entirely permissible one, and the fact that the same word is obviously used in a different sense in other connections is not important.

An examination of other provisions of law enacted at the same time as section 210 of the Code of Civil Procedure demonstrates that the legislature could not have intended the section

to operate as a discharge of any impaneled jury. As we have
seen, the section applies to both grand and trial jurors, and
the claim of petitioner leads to the result that the selection and
return to the county clerk of the list of jurors for the succeed-
ing year and the placing of those names in the general jury
box *ipso facto* discharges from service and dissolves any
impaneled jury, grand or trial, that may then be in attendance
on the court, members of which were drawn from lists of the
preceding year.

It is inconceivable that there was any such intention as to
trial juries. It would be a most absurd provision that a jury
engaged in the actual trial of a cause, and perhaps just about
to render a verdict after a long and expensive trial, should
be deprived of power to act further in the case solely by reason
of the fact that a new list of available jurors for the ensuing
year had been returned to the county clerk and the names had
been deposited in a trial jury box. Such a provision could
accomplish no good, and would be productive of great injury.
The intention of the legislature as to such juries is clearly
shown by other sections of the code adopted at the same time,
specially relating to juries. It is apparent therefrom that a
jury impaneled to try a case was to conclude that case if
possible. As to criminal cases, after providing for the dis-
charge of the impaneled jury in certain contingencies only,
such as sickness of a juror, etc., it was provided in section
1140 of the Penal Code that, except as otherwise provided, a
jury "cannot be discharged after the cause is submitted to
them until they have agreed on their verdict and rendered
it in open court," except by consent of the parties or by the
court when the jury is unable to agree. Practically the same
was true as to civil cases. We cannot reconcile these provisions
with section 210 of the Code of Civil Procedure if that section
is to be construed as urged by petitioner.

The intention as to grand juries is equally clear. Express
provision as to the time during which an impaneled grand
jury shall continue in existence was made in the Penal Code.
Unless sooner discharged by the court, they were discharged
only by the final adjournment of the court for the term.
(Sec. 906.) The grand jury was at that time a part of our
old county court system. The law provided for the impanel-
ment of a grand jury at the opening of each regular term of

the county court, unless otherwise directed by the judge (Code Civ. Proc., sec. 241), and where such impanelment was to be had the judge was required to make an order for the drawing from the "regular jurors" of a sufficient number of grand jurors from which the grand jury might be selected. (Code Civ. Proc., sec. 214.) This drawing was required to be made at least seven days before the opening of the term. The terms of the county court were fixed by the same code (Code Civ. Proc., sec. 88), and in more than half of the counties, including San Francisco, a term commenced on the first Monday of January in each year. By the provisions of a general act, approved March 1, 1872, each term of court continued until the next regular term, a period varying in length from two to four months, unless the business of the court was sooner disposed of. The selections of persons to serve as "regular jurors" for grand jury purposes were then required to be made by the board of supervisors of each county at their first regular meeting in each year, which was ordinarily the first Monday in January. It is apparent from this that the grand jury impaneled at the opening of the term of each county court commencing on the first Monday of January would be taken from the list of the preceding year, and that within a very few days after such impanelment, the new selections of "regular jurors" for the ensuing year would be ma.le and returned. Under petitioner's construction the selection and return of the new jurors would have discharged the grand jury impaneled only a few days before, and just commencing the business for which it had been brought together, and this in the face of a provision in the Penal Code which clearly implies that such jury should continue until it completed the business before it was discharged by the court, or until the final adjournment of the court for the term. Of course, no such absurdity was intended. Force and effect can be given to the various provisions enacted in 1872 relative to juries, as distinguished from jurors, only by construing section 210, Code of Civil Procedure, as it was construed in the Gannon and Kelly cases. So construed all the provisions are harmonious and the result sensible. (See, also, *State* v. *Second Judicial Dist. Ct.*, 31 Mont. 428, [78 Pac. 769].)

It has been suggested that the object of section 210 of the Code of Civil Procedure was to prevent the keeping in exist-

ence any particular grand jury for an indefinite time. It is obvious that this could not have been the purpose of the section, in view of the provisions of section 906 of the Penal Code, enacted at the same time, which expressly limited the life of the grand jury to the term of the court for which it was impaneled, a period of from two to four months. We are satisfied that the latter section of the penal code was intended to cover the whole subject of the discharge of a grand jury.

While we have not discussed all the arguments made by learned counsel in support of the contention of petitioner, we have considered them all, and find therein no reason to doubt the correctness of the decisions in the Gannon and Kelly cases.

The application for a writ of prohibition is denied.

McFARLAND, J., dissenting.—I dissent, and think that the writ of prohibition asked for should be granted. I base this conclusion on the ground that at the time of the presentation of the indictment against the petitioner the body of men who undertook to indict him was not a grand jury, and that the purported indictment was a nullity and gave no jurisdiction to the superior court to try the petitioner.

A man cannot be legally placed on trial for a felony at the will of any person or body of persons who may choose to make an accusation against him. The accusation must be made in manner as provided by law, and if there is no such accusation there is no jurisdiction in any court to try the accused. In this state there are only two legal ways of putting a man upon trial for a felony: one by information after open examination and commitment by a magistrate, which need not be here considered; the other—the one claimed to have been followed in this case—by indictment by a grand jury. The court is about to proceed to try petitioner upon a paper writing in the form of an indictment for a felony, filed in the court, and presented by a body of men claiming to be a grand jury. Petitioner alleges that this body was not a grand jury at the time the said paper writing was presented; and if this be so, as I am clear it is, then there is no jurisdiction in the subordinate court to proceed with the trial and the writ of prohibition should issue. Respondent concedes that if this be so the remedy by prohibition is proper.

The ordeal of being compelled to submit to a trial upon an indictment for an alleged felony is a most onerous one. The accused must prepare for a trial, he must endure all the temporary obloquy of such a charge; though innocent, he must take the chances of being convicted upon insufficient evidence, which may easily happen when there is a great public feeling against him or against a class to which he is supposed to belong, and juries are liable to be insensibly influenced by popular clamor. Moreover, though acquitted, he can never wholly escape the shadow of the cloud which an indictment and trial have cast over him; his enemies may always intimate that he was acquitted merely because the evidence was not quite strong enough to show him guilty beyond a reasonable doubt. It is therefore not only the right of the accused person to resist a trial when not prosecuted according to law, but it is his duty to himself, to those dependent on him, and to his friends to do so.

The provisions of the code upon which the question in this case arises are, so far as material, briefly as follows: Section 204 of the Code of Civil Procedure provides that in January "in each year" a majority of the judges of the superior court of San Francisco shall make an order designating the estimated number of grand jurors that will in their opinion be required for the transaction of the business of the court "during the ensuing year"; immediately after making such order they "shall select and list" the grand jurors required by said order to serve as grand jurors in said superior court during the ensuing year *or until new lists shall be provided,* and lists of "persons so selected" shall immediately be placed in the possession of the county clerk. Section 209 of the Code of Civil Procedure provides that upon receiving such list the county clerk shall file the same in his office, write the names of the persons selected on separate pieces of paper of same size and appearance, and fold each piece so as to conceal the name thereon, and shall deposit these pieces of paper with the names on them in a box to be called the "grand jury box." From the persons whose names are thus in the box a grand jury must be drawn and impaneled whenever a grand jury is needed for the transaction of the business of the court. Section 210 provides (and this is the most important provision bearing on the question here involved) as follows: "The per-

sons whose names are so returned shall be known as regular jurors, and shall serve for one year, and *until other persons are selected and returned.*'' The facts bearing upon the question presented in the case at bar are these: In January, 1906, the judges of said superior court made an order that one hundred and forty-four grand jurors would be required for the transaction of the business of the court during the ensuing year. They selected one hundred and forty-four persons and gave a list thereof to the clerk, who filed the same in his office and put the names of such persons each on a separate and similar piece of paper in the grand jury box, as required by the provisions of the code hereinbefore referred to. From this box a grand jury was drawn and impaneled during the year 1906. In January, 1907, the judges again made an order that one hundred and forty-four grand jurors would be required to transact the business of the court for the ensuing year; they selected that number of persons for grand jurors and gave a list of them to the clerk, who filed the same and put the names on separate pieces of paper in the grand jury box, as provided by the code. This was all done not later than February 14, 1907, and if thereafter during the ensuing year it became necessary to have a grand jury for the transaction of the business of the court, these persons who were thus selected in January, 1907, and whose names were in the grand jury box for that year, were the proper persons from whom to draw and impanel such grand jury. No jury, however, was impaneled from such persons; but the persons who constituted the said former grand jury of 1906 assumed to continue to act as grand jury after January, and are still assuming so to act, and on May 24th, about four months after said new list had been provided, they presented to the superior court a paper writing which in form is an indictment of petitioner for felony. It is upon this paper writing that the respondent court is about to proceed to try petitioner. There is no other accusation against him.

Under the code provisions and the facts as above stated the invalidity of said paper writing as an indictment is so plain, clear, and obvious to my mind that the subject does not present to me even a debatable question.

Under the code the persons selected in January of each year are to act for one year and "until" other persons are selected

the next year. This means that they shall act only until the happening of the event mentioned, and not afterwards; the word "until" as used in section 210 is a word of limitation, and designates the end of the thing referred to. The meaning of this word when used as in the code is aptly stated by the court of appeals of Missouri in *Maginn* v. *Lancaster,* 100 Mo. App. 116, [73 S. W. 372], as follows: "The word 'until' is a word of limitation, used ordinarily to restrict what immediately precedes it to what immediately follows it. Its office is to point out some point of time, or the happening of some event, when what precedes it shall cease to exist, or have any further force or effect." But there is no need to elaborate this proposition further, because, as I understand it, there is no serious contention that the word "until" in section 210 is not a word of limitation as to the persons and things to which it refers; but it is contended that it does not apply to the persons who constituted the grand jury of 1906 and who claim to still constitute a legal grand jury, notwithstanding the provisions of the code and the fact that in January, 1907, "other persons" were selected.

In support of the point last above mentioned it is contended that the provision in section 210, that after the selection of "other persons" the former persons shall not serve, does not mean that they shall not serve when impaneled in a grand jury, but that it refers only to those whose names are in the jury box liable to be called upon to form a grand jury but who have not been so called. I see no rational ground for such contention. The language of the code certainly does not contain any such out-of-the-way limitation of the word. It simply uses the plain word "serve" in its ordinary sense; there is no limitation of its meaning—no intimation of an intent to employ a well-known English word in a sense different from that which is commonly attached to it. We are therefore to give the word its ordinary meaning, just as we give to other common words their ordinary meaning, considered, of course, in the relation which the word bears to the context. Now, what is the plain meaning of the word "serve" as applied to the persons selected as regular grand jurors under the code? The general meaning of the word "serve" is to "perform service," and it is difficult to see how a person whose only relation to a grand jury consists of his name being in a box—frequently without his

knowledge—can possibly serve in the sense of performing service. It seems to me that he can properly be said to "serve" as a grand juror only when he is in a position to do something as such juror—only after his impanelment into a grand jury has given him the power to perform some act in the capacity of grand juror. But suppose it be considered not improper to say that he serves when he is merely in the negative position of being liable to be called upon to act as a grand juror,—upon what species of reasoning can it be held that he ceases to serve as soon as he is impaneled into a grand jury? When he is acting as a member of an impaneled grand jury is he not serving? To say that before he becomes a member of an impaneled grand jury, and while he does not do, and cannot possibly do, any act of service, he is nevertheless serving, but that when he becomes part of a grand jury, and can and does render service, he does *not* "serve," is substantially to say that when he does not serve he "serves," and that when he does serve, he does not serve. The word "serve" as used in section 210 clearly includes every act and every situation to which the word "serve" as a grand juror can in any sense apply. There is certainly no language in the code that intimates that a grand juror is not serving when he is acting as part of an impaneled grand jury; on the other hand, it appears from section 211 that serving on such a jury is the only way in which he can "serve," for it provides that if at the end of the year there shall be persons selected as grand jurors "who may not have been drawn during the year to *serve,* and have not served as jurors, such persons may be placed on the list of jurors drawn for the succeeding year." I cannot imagine how, in the face of this provision, it can be gravely asserted that to "serve" as used in section 210 does not mean to serve as a grand juror. Clearly section 210 limits the term of service of a person selected as a grand juror,—limits it for all purposes, limits it as to all kinds of service as a grand juror; and after the happening of the event referred to in said section he is no longer qualified as such juror. This plain and obvious meaning of the code is, in some of the respondent's briefs, sought to be explained away by the assertion that while the term of a grand juror is limited there is no limitation of the term of a grand jury. But how can there be a legal grand jury which is composed of persons who are not qualified to

act as grand jurors, and why speculate about the impossible term of an imaginary grand jury which has no existence?

It is also sought to escape the plain, obvious meaning of the code as above stated by invoking the rule of *stare decisis*. This attempt is based on the case of *In re Gannon*, 69 Cal. 541, [11 Pac. 240]. The opinion in that case no doubt expresses views favorable to respondent's contention, but so far as it does so the opinion is, I think, clearly erroneous. But that case does not support the doctrine of *stare decisis* for several reasons. In the first place the rule of *stare decisis* has seldom or ever been successfully invoked in a criminal case involving liberty; it applies to civil actions where a rule of property or commercial business has been established. In the second place, the question here under discussion was not necessarily involved in the Gannon case. That case was an attempt, on *habeas corpus*, to be discharged from a judgment of imprisonment rendered by a superior court for contempt committed by the petitioner in refusing to testify as a witness before an acting grand jury claimed by him to be an illegal body; but the court held that the illegality of a grand jury could not be thus collaterally attacked. The court said: "The authority of such a body, whether it be *de facto* or *de jure*, cannot be legally assailed or called in question by a witness summoned before it. The authority of such a body, exercising its powers as instrumental to the court of which it is a part, must be respected and obeyed." That was an adjudication of the case on that point; and whatever else was said in the opinion was *obiter*. The position taken in the Gannon case which is here relied on was also assumed to be correct in the case of *Kelly* v. *Wilson*, which has not been reported, but may be found in 11 Pac. 244 (Cal.). That case, however, was decided at the same time as the Gannon case, and was based entirely upon the authority of the Gannon case, and therefore adds nothing to that authority. Aferwards the only case in which the Gannon case was brought before this court is the case of *People* v. *Leonard*, 106 Cal. 302, [39 Pac. 617], and in the latter case the part of the opinion in the Gannon case here relied on was questioned and substantially disapproved. In the Leonard case the question was whether a valid indictment could be presented by a grand jury of a former year attempting to hold

over after the list of other persons had been selected for the succeeding year. If the court had been satisfied with the opinion in the Gannon case on that point, it clearly would have acted on the authority of that case. It, however, proceeded to inquire into the very question disposed of in the opinion in the Gannon case, and held the indictment good because it did not appear that a new list had been prepared for the coming year. The court says: "It does not appear from the record, and is not probable, that in fact the jurors for 1894 had been 'selected and returned' at the date of the finding of the indictment. If they had not been, it was clearly proper to continue the jury of 1893 until such event happened." This language leaves an inference as broad as the trail of an army that if the record had shown that a new list had been made the indictment would have been held invalid. While this may not perhaps be said to be an express overruling of that part of the opinion in the Gannon case here relied on, it certainly undermined and shattered it so much as to leave it without value as a basis for the extreme doctrine of *stare decisis* here invoked.

I see, therefore, in all that is argued by respondent no successful method of evading the obvious meaning of the code provisions on the subject of grand jurors; and why should not that obvious meaning be accepted instead of trying to find some hidden and labored reason for evading it? The kind of construction contended for by respondent would be too strained to warrant even a ruling in support of marriage, or legitimacy of children, or any other *status* expressly favored by the law. But when such construction is invoked in a criminal case, and against the liberty of the citizen, it is, in my opinion, beyond the reach of the farthest and thinnest shadow of any legitimate principle of interpretation.

The history of free government presents no spectacle more noble than that of an accused American citizen successfully demanding that he be proceeded against according to "the law of the land." The right to make such demand is the beneficent result of centuries of struggles by English-speaking people for personal liberty, and to sustain the contention of respondents in the case at bar is, in my opinion, to clearly deny that right, and to mar the most important and sacred feature of American law.

When a list of persons have been selected in January to serve as grand jurors for the ensuing year, why should not a grand jury when afterwards required be drawn and impaneled from such list? In the case at bar it may be assumed that this course was not taken through inadvertence, and not from any unworthy motive. But the power to thus juggle with grand juries—to retain the old jury indefinitely or to impanel one from the new list, just as certain ruling interests may be subserved by the one course or the other—is a most dangerous power, and should not be countenanced for an instant, unless clearly given by the law; and the law gives no such power. It would be better for a score of accused persons to be temporarily discharged than that one. accused person should be denied due process of law. The public will suffer nothing by a compliance with the code provisions about grand jurors. A grand jury can be immediately drawn from the box of 1907 and legally impaneled, and such jury, if there really is a *prima facie* case of guilt against the petitioner, can at once legally indict him and he then can be properly placed upon his trial.