[Crim. No. 315.   Second Appellate District.—June 10, 1914.]

THE PEOPLE, Respondent, v. LOUIS COSTA, Appellant.

CRIMINAL LAW—RAPE—FEMALE UNDER AGE OF CONSENT—CROSS-EXAMINATION OF PROSECUTRIX.—In a prosecution for rape upon a female under the age of consent the very widest latitude compatible with our somewhat technical and restricted rules of evidence should be allowed the defendant in his cross-examination of the witnesses of the people. More especially is this true with reference to the prosecuting witness. In this class of prosecutions the defendant, owing to natural instincts and laudable sentiments on the part of the jury, and the usual circumstances of isolation of the parties involved at the commission of the offense, is, as a rule, so disproportionately at the mercy of the prosecutrix's evidence, that he should be given the full measure of every legal right in an endeavor to maintain his innocence.

ID.—FAILURE OF PROSECUTRIX TO MAKE COMPLAINT—RESTRICTION ON RIGHT OF CROSS-EXAMINATION.—In such prosecution it is not only error, but highly prejudicial to the substantial rights of the defendant, to refuse to permit him on cross-examination of the prosecutrix to fully investigate the circumstances of, and also her motives and reasons for, withholding any statement of the alleged offense for the period of two months, and then telling the same to the officers who had her in custody under arrest.

ID.—VENEREAL DISEASE OF PROSECUTRIX—EVIDENCE THAT ACCUSED HAS NO SUCH DISEASE.—If in such prosecution testimony is introduced to the effect that the prosecutrix at the time of the trial had a venereal disease which, according to her testimony, could only have been contracted from the defendant, it is error to refuse to permit the defendant to show by the testimony of physicians that he is not suffering from such a disease, and perhaps has never had it.

ID.—ADMISSIONS OF DEFENDANT—WHEN SHOULD BE STRICKEN OUT.—
Admissions made by the defendant concerning his relations with
the prosecutrix should be stricken out promptly when it is dis-
closed on cross-examination that the witness did not know whether
the admissions referred to the prosecutrix or one of several other girls
who frequented the vicinity of the commission of the alleged offense.
The court should not refuse to rule on the motion therefor until the
argument to the jury is begun, and then remark, "I think the testi-
mony of Mr. C. should be stricken out."

ID.—MISCONDUCT OF COURT—WHETHER REVERSIBLE ERROR.—The action
of a trial judge in being hasty, unreasonably arbitrary and humil-
iating throughout the trial to the defendant's counsel, standing
alone, in the absence of prejudicial error, would not justify a
reversal of this case, but merely accentuate the effect of other
errors disclosed by the record.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial.
Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Ernest M. Torchia, and Henry E. Carter, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy
Attorney-General, for Respondent

SHAW, J.—Defendant was convicted of the crime of rape
alleged to have been committed June 3, 1913, upon a female
under the age of sixteen years. He appeals from the judg-
ment and an order denying his motion for a new trial.

Defendant was a night watchman for a machine-shop along-
side of which was a lumber yard, both located adjoining the
beach at San Pedro. According to the prosecutrix, who was
fourteen years of age, she had been wading along the beach
and at about 6 o'clock P. M. the defendant, whom she had
known for some time, approached and spoke to her, when
they walked into the lumber yard, and upon reaching a cer-
tain point defendant took hold of her and pulled her a few
feet around a pile of lumber and committed the act charged.
On cross-examination she was questioned as to whether she
at the time said anything to her mother about the matter,
when she first told her mother of what defendant had done,

and whether she told any one about the matter, to all of which questions objections were sustained upon the ground that the evidence sought to be elicited was immaterial and not cross-examination. It appears that on July 31 the girl was arrested by two officers—upon what ground is not shown. After taking her home, the same officers went immediately in search of defendant and placed him under arrest. Referring to her arrest and being taken to court, she was on cross-examination asked, among other similar questions, whether the officers said anything to her, whether that was the time she made complaint against defendant, to which objection was sustained. She was then asked the following questions: ''When was the first time you made complaint against the defendant?'' Did you have a talk with the officers when they were taking you down to court?'' to which objections, based upon the ground that they were immaterial and not cross-examination, were sustained. Thereafter defendant called the prosecutrix as his own witness and, after proving by her that on July 31 she first told of the circumstance and then to the officers arresting her, the following proceedings occurred:

''Q. Now, what did those officers say to you when they arrested you? I will ask you if they arrested you?

''Mr. Blair: I object to that as immaterial, irrelevant and incompetent, and no foundation laid what they said. It is hearsay. I put it on that ground.

''The Court: The objection is sustained.

''Mr. Carter: Now, your honor——

''The Court: I have ruled on that, Mr. Carter. Proceed.

''Mr. Carter: I have authority——

''The Court: Mr. Carter, would you mind going on with the case?

''Mr. Carter: I think this is very material.

''The Court: I intend to be polite. You take your seat, Mr. Carter.

''Mr. Carter: I will ask——

''The Court: Mr. Bailiff, you will seat Mr. Carter, if he does not seat himself.

''Mr. Carter: I bow to the court, but I insist on this.

''The Court: All right.

"Mr. Carter: Q. Did the police officers make any threat to you to induce you to tell what had happened between you and Louie?

"Mr. Blair: Just a minute. I object to that as leading; immaterial, irrelevant and incompetent; and hearsay, and no foundation laid.

"The Court: I sustain it on the last ground.

"Mr. Carter: Q. Were any threats made to you when you made this complaint to the police officers?

"Mr. Blair: Object to that as immaterial, irrelevant and incompetent, and no foundation laid.

"The Court: I sustain it on the last ground.

"Mr. Carter: Q. State what the police officers said to you when they took you under arrest, or put you under arrest at the lumber yard on the 31st day of July of this year?

"Mr. Blair: I object to that as calling for hearsay evidence, and no foundation laid.

"The Court: The objection is sustained.

"Mr. Carter: Q. Was there anything said by the officers to you in reference to any transaction between you and Louis Costa at the time of your arrest?

"Mr. Blair: I object to that as hearsay evidence and as immaterial, irrelevant and incompetent, and no foundation laid.

"The Court: The same ruling, the objection is sustained."

Notwithstanding the fact that the alleged offense was committed on June 3rd, the prosecutrix made no complaint prior to July 31st, on which date she was placed under arrest, when she voluntarily, or by reason of threats, intimidation, or promise of immunity, told the officers arresting her that she had had sexual intercourse with defendant. If the statement was obtained by threats, or she was induced to make the complaint by promise of immunity from prosecution, it was highly important to defendant that the jury be informed of such fact as affecting the weight to be given her testimony upon which, with little or no corroborative circumstances, he was convicted. The mere charge of an offense so heinous in nature is well calculated to arouse the feelings of the jury against the accused and excite its sympathy for the prosecutrix, particularly when the latter is a child of fourteen years of age, thus placing the defendant, however innocent,

at the mercy of her evidence. Said the supreme court in
*People* v. *Benson,* 6 Cal. 223, [65 Am. Dec. 506], in dis-
cussing a like case: "There is no class of prosecutions at-
tended with so much danger, or which afford so ample an
opportunity for the free play of malice and private venge-
ance. In such cases the accused is almost defenseless, and
courts, in view of the facility with which charges of this
character may be invented and maintained, have been strict
in laying down the rule which should govern the jury in their
finding." And in *People* v. *Baldwin,* 117 Cal. 249, [49 Pac.
187], it is said: "It will be sufficient to say, in a general way,
that in a case of this character the very widest latitude com-
patible with our somewhat technical and restricted rules of
evidence should be allowed the defendant in his cross-exami-
nation of the witnesses of the people. More especially is
this true with reference to the prosecuting witness. In this
class of prosecutions the defendant, owing to natural in-
stincts and laudable sentiments on the part of the jury, and
the usual circumstances of isolation of the parties involved
at the commission of the offense, is, as a rule, so dispropor-
tionately at the mercy of the prosecutrix's evidence, that he
should be given the full measure of every legal right in an
endeavor to maintain his innocence." See, also, *People* v.
*Christy,* 65 Hun, 352, [20 N. Y. Supp. 278]; *People* v.
*Mitchell,* 5 Cal. App. 45, [89 Pac. 853]; *People* v. *Howard,*
143 Cal. 316, [76 Pac. 1116]. The rulings of the court in
excluding the evidence were not only error, but highly preju-
dicial to the substantial rights of defendant. The court
should have permitted the fullest investigation as to the
circumstances, motive, and reasons for withholding any state-
ment of the offiense for a period of two months and then
telling the officers who had her in custody under arrest. As
said in *People* v. *Howard,* 143 Cal. 316, [76 Pac. 1116]: "If
she was testifying to the truth, such investigation would not
have injured the cause of the prosecution. If she was testi-
fying to a falsehood, the defendant should have been allowed
in every reasonable way to show it."

A physician was called as a witness on the part of the
people, who testified that she made a physical examination
of the prosecutrix a few days before the trial and found that
she had gonorrhoea. The prosecutrix had testified to having

had but one act of sexual intercourse in her life, and that was with the defendant on June 3rd, from which fact, if true, it naturally followed that the disease was contracted from him. For the purpose of showing the improbability of such conclusion defendant called as a witness a physician who had made a physical examination of him, and by questions sought to elicit evidence to the effect that he was not afflicted with gonorrhoea. Objection was made thereto upon the ground that it was too remote; whereupon defendant's attorney said to the court: "I may state to the court in that relation that this defendant was examined by some of the city physicians in the city jail—" but was interrupted by the court, saying: "That has not anything to do with this witness's testimony." The witness was then permitted to state the he examined the defendant for the purpose of ascertaining whether or not there was any gonorrhoeal infection, to which evidence, notwithstanding it had been given, an objection was sustained. With reference to this alleged error, the language of the court in *People* v. *Fong Chung*, 5 Cal. App. 587, [91 Pac. 105], is particularly applicable: "The district attorney in his zeal desired the case to be presented to the jury upon evidence as to the one act with defendant, and the corroborating fact of the girl having a venereal disease. Such facts alone would give him a beautiful theory as to the defendant's outrage upon an innocent girl of tender years, and his giving her a venereal disease; but the defendant had some rights." If the testimony to the effect that the girl at the time of the trial had a venereal disease which, according to her testimony, could only have been contracted from the defendant, then certainly testimony of physicians to the effect that defendant was not suffering from such disease, and perhaps had never had it, was competent as tending to contradict the inference which might be drawn from the people's testimony. He should have been allowed in every reasonable way to prove the impossibility of the girl contracting the disease from him.

Witness Corbett was called on behalf of the people and permitted to give evidence as to statements made in his presence by defendant concerning his relations with the girl. On cross-examination, however, the fact was brought out that there were several girls who frequented the vicinity and the witness did not know what girl was referred to, and it was made apparent that the direct evidence of the witness did

not tend in any way to connect defendant's statements with
the prosecutrix. Whereupon, after such fact was disclosed
on cross-examination, defendant moved that all evidence of
the witness as to admissions of defendant be stricken out for
the reason that it was not shown that such admissions had
any reference to the prosecuting witness or were in anywise
connected with the crime charged. The court refused to
rule upon the motion, stating that it would do so before the
case was over. No ruling was made until the argument to
the jury was begun, when the court remarked: "I think the
testimony of Mr. Corbett should be stricken out." Whether
such thought was expressed to the jury, is not made to ap-
pear. The testimony of this witness was of a character
which, under the circumstances, rendered it highly preju-
dicial to defendant and should have been stricken out and
withdrawn from the jury immediately upon the close of the
cross-examination when the motion was made. The casual
soliloquy of the court after the argument to the jury had
begun was in no wise calculated to remove from the minds of
the jurors the poisonous effect of the incompetent testimony.

At another point in the proceedings a motion was made by
defendant's counsel to strike out an answer given by the wit-
ness, which motion was granted, the court, however, stating:
"One of the jurors did not hear that last answer. Will the
reporter read it?" Aside from the fact that, so far as
shown by the record, no juror indicated his failure to hear
the answer which was stricken out as incompetent, we are
at a loss to perceive any reason for having it read to the jury.

Appellant complains that, throughout the trial, the action
of the trial judge was hasty, unreasonably arbitrary, and
humiliating to his counsel. Such fact, if true, standing alone
in the absence of prejudicial erorr, would not justify a re-
versal of the case, but merely accentuate the effect of other
errors disclosed by the record.

The record discloses other errors, some of which are like-
wise prejudicial, but as the judgment and order appealed
from must be reversed for the reasons above stated, it is un-
necessary to discuss them, since a recurrence thereof is
improbable in a retrial of the case.

The judgment and order are reversed.

Conrey, P. J., and James, J., concurred.