[Crim. No. 323. Second Appellate District.—June 18, 1914.]

## THE PEOPLE, Respondent, v. NEILS SVENDSEN, Appellant.

CRIMINAL LAW—ROBBERY—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.—In this prosecution for robbery the evidence is sufficient to support the verdict of guilty.

ID.—RESTRICTION BY COURT OF CROSS-EXAMINATION—WHETHER PREJUDICIAL TO DEFENDANT.—In such prosecution the trial court might properly have allowed the defendant greater latitude in the cross-examination of the prosecuting witness than it did, but it cannot be said that the record discloses that the defendant's rights were prejudiced by the limitation placed on such cross-examination.

ID.—CROSS-EXAMINATION OF WITNESS—CONTROL BY COURT—REVIEW ON APPEAL.—The control of the cross-examination of a witness, and the permitting of leading questions to be asked of one's own witness, is largely in the discretion of the trial judge, and unless there is an abuse in the exercise thereof and the rights of the defendant are prejudiced thereby, the action of the lower court should not be disturbed on appeal.

ID.—CROSS-EXAMINATION OF ACCUSED—EXTENT TO WHICH SHOULD BE PERMITTED.—Where the life or liberty of one accused of an offense depends upon the uncorroborated evidence of the prosecuting witness, the ends of justice will be best subserved by permitting the light of a full investigation to be thrown upon the transaction, which, other than his own statement, in the absence of the direct evidence elicited by the district attorney, can be done only on cross-examination of the witness. The policy often pursued by district attorneys in proving the bare facts and then objecting to questions calculated to illuminate the subject involved, asked by the accused, upon the ground that they are not proper cross-examination, is

not to be commended; and the trial judge, who is supposed as between the accuser and the accused to sit impartially, should, notwithstanding the limited scope of the direct examination, grant to the defendant the fullest opportunity for cross-examination and inquiry as to direct statements made against him by his prosecutor.

ID.—PROCEDURE IN CRIMINAL CASE—DUTY OF TRIAL COURT TO SEE THAT DEFENDANT IS ACCORDED EVERY RIGHT.—So long as the present system of criminal procedure prevails, and particularly since the adoption of section 4½ of article VI of the constitution, under which, notwithstanding a defendant has by a ruling of the court been deprived of a legal right in his trial, he is nevertheless, on appeal, without remedy, unless the appellate court can say upon the entire evidence that such error has resulted in a miscarriage of justice, a greater and larger responsibility rests upon the trial judge in seeing that a defendant on trial is accorded every right to which he is entitled; otherwise a legal wrong is done under judicial sanction for which the aggrieved is without remedy.

ID.—ADMISSIONS OF DEFENDANT—ADMISSIBILITY IN EVIDENCE.—Admissions made by the defendant to the arresting officer, which are not confessions of guilt, are admissible in evidence without any preliminary foundation being laid.

ID.—INSTRUCTIONS AS TO REASONABLE DOUBT—MODIFICATION—WHETHER ERROR.—The modification of an instruction that, if after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is his duty "not to vote for a verdict of 'guilty' nor" not to be influenced into voting for the single reason that a majority of the jury should be in favor of a verdict of guilty, by striking out the quoted words, is not error.

ID.—MISCONDUCT OF COURT TOWARD DEFENDANT'S COUNSEL—WHETHER PREJUDICIAL ERROR.—While the trial court in this case might have expressed its rulings in a manner indicative of less impatience and less calculated to affect the sensibilities of the defendant's counsel, it cannot be said, in the absence of prejudicial error, that this alone was sufficient to prejudice the rights of defendant. Such action on the part of the court merely accentuates prejudicial error exhibited by the record.

APPEAL from a judgment of the Superior Court of Los Angeles County. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Frank A. McDonald, and Nathaniel R. Rutherford, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

SHAW, J.—Defendant was convicted upon an information charging him with the crime of robbery. He appeals from the judgment alone.

On the night of August 2, 1913, defendant, who had been to the city of Los Angeles, alighted from a suburban electric car at a point near the town of Whittier, from which point he started to walk to the farm where he was employed as a dairyman. On the same car was a Chinaman, Sing Lee, who was also traveling from Los Angeles to his place of employment as a farm laborer near Whittier and distant about one mile from the point where both he and the defendant left the electric car at the same time. In going to their respective places of employment, both defendant and Sing Lee on foot and together traveled the same road. When they had reached a point about a quarter of a mile from the camp where Sing Lee was employed, and at about 12:15 o'clock on the morning of August 3rd, a fight ensued wherein defendant, as conclusively shown, inflicted upon the Chinaman some forty to fifty knife wounds, a number of which were dangerous and as a result of which Sing Lee was left in a disabled and semi-conscious condition in which he was found several hours later by persons traveling the thoroughfare. There were no witnesses other than the parties to the encounter and their versions as to who was the aggressor and other material facts · are conflicting. According to Sing Lee's testimony, defendant, without provocation, suddenly attacked him by grasping his throat, holding his knuckles against his vocal cords, and, saying, "God damn, no likee me," began using a knife on him until, disabled from his numerous wounds, he fell to the ground, when defendant searched his pockets, taking therefrom a purse containing $4.05, and left him. Defendant testified: "This Chinaman met me on the boulevard, and he says, 'Where do you live'? I told him it was none of his damn business. He said, 'What is the matter with you'? I says, 'Don't bother me; I ain't got no use for Chinamen; cheap labor.' And about that time he pulled out a knife and struck me on the forehead with the knife, and we had quite a fight there on the boulevard. I got the advantage of him and took his knife away from him and give him quite a beating"; but that he did not go through his pockets, nor take any money from, nor rob him; that Sing Lee first struck

him in the forehead with a knife; whereupon he took the knife away from the Chinaman and struck him once or twice; that in taking the knife he took hold of the blade, cutting his hand. There was some corroborative evidence that defendant had a cut on his hand.

It is apparent that the jury in reaching a verdict believed the testimony of the Chinaman, to the effect that the defendant robbed him of the purse containing the money. Defendant's story, in view of the fact that when found the next morning Sing Lee had forty or fifty knife wounds in his body, that he took the knife from Sing Lee who was the aggressor and struck him with it once or twice only, was well calculated to cause the jury to discredit his entire testimony. It was the province of the jury to determine the fact, as to which the evidence was conflicting. Hence there is no merit in the contention that the evidence was insufficient to support the verdict of conviction.

On direct examination Sing Lee testified: "He (the defendant) took from me a pocketbook containing four dollars and five cents." On cross-examination, after stating that he had this purse in his trousers pocket, he was asked: "Did the defendant put his hand in your pocket and take your purse from your pocket?" The judge, without waiting for an objection to be interposed or answer given, interrupted, saying: "He has answered that," to which defendant's attorney replied: "Not that question," in reply to which the learned judge said: "Yes, he has. I will sustain an objection and make it myself. We have got to get through here some time. The next question, if you have got another one, Mr. McDonald." The witness stated the trousers he had on were those worn at the time of the robbery, and that while he was in the hospital the nurse took them to the laundry, having them cleaned. He was then asked: "Is that the only person that has ever had your trousers in their possession or cleaned them since the 2nd day of August?" to which the court sustained an objection upon the ground that it was immaterial. He was also asked: "Who lives with you on this ranch?" Whereupon, no objection being interposed, the court said: "That is not proper cross-examination." An objection was also sustained to a question as to whether he had been spending the night in Chinatown and what he had been doing. The control of the cross-examination of a wit-

ness and the permitting of leading questions to be asked
of one's own witness, is largely in the discretion of the trial
judge, and unless there be an abuse in the exercise thereof
and the rights of defendant prejudiced thereby, the action
of the court should not be disturbed. The witness, if we
may determine from the record, had not stated in terms, as
said by the court, that defendant put his hand in his pocket
and took therefrom his purse, and, conceding that he had,
he might very properly have been permitted to answer the
question. Doubtless he would have given an affirmative an-
swer, since by reason of its being in his pocket he could not
have obtained it otherwise, except by forcing Sing Lee to
take it from the pocket and hand it over to him, in which
case the act would have constituted the offense charged.
Hence, conceding the ruling of the court to be error, it must
likewise be conceded that it was not prejudicial to the sub-
stantial rights of defendant. The other questions to which
objections were sustained appear to have been immaterial.
The answers, whatever they might have been, could not have
had the slightest effect upon the question at issue. The same
remarks apply with equal force to a number of like assign-
ments of error based upon rulings in the admission and re-
jection of evidence. While we think the court might prop-
erly have allowed defendant greater latitude in the cross-
examination of the prosecuting witness, it cannot be said the
record discloses that defendant's rights were prejudiced by
the limitation placed thereon. In this connection it may be
said generally, however, that where the life or liberty of
one accused of an offense depends upon the uncorroborated
evidence of the prosecuting witness, the ends of justice will
be best subserved by permitting the light of a full investiga-
tion to be thrown upon the transaction, which, other than
his own statement, in the absence of direct evidence elicited
by the district attorney, can only be done on cross-examina-
tion of the witness. The policy often pursued by district
attorneys in proving the bare facts and then objecting to
questions calculated to illuminate the subject involved, asked
by the accused, upon the ground that they are not proper
cross-examination, is not to be commended; and the trial
judge, who is supposed as between the accuser and the ac-
cused to sit impartially, should, notwithstanding the limited
scope of the direct examination, grant to defendant the fullest

opportunity for cross-examination and inquiry as to direct statements made against him by his prosecutor. So long as the present system of criminal procedure prevails, and particularly since the adoption of section 4½ of article VI of the constitution, under which, notwithstanding a defendant has by a ruling of the court been deprived of a legal right in his trial, he is nevertheless, on appeal, without remedy, unless this court can say upon the entire evidence that such error has resulted in a miscarriage of justice, a greater and larger responsibility rests upon the trial judge in seeing that a defendant on trial is accorded every right to which he is entitled; otherwise a legal wrong is done under judicial sanction for which the aggrieved is without remedy.

One of the officers who made the arrest of defendant was called as a witness for the people and testified as to certain statements made to him by defendant at the time when placed under arrest. After the district attorney had asked certain preliminary questions, the witness was told to repeat the conversation had with defendant. Thereupon the following proceedings were had:

"Mr. McDonald: Just a moment. Was this conversation had—

"The Court: You are not cross-examining.

"Mr. McDonald: For the purpose of objection—

"The Court: "Well, I don't care anything about that. You will get your chance when the time comes."

And again, when the witness was asked to repeat another talk had with defendant, his attorney, addressing the court stated: "For the purpose of objecting, I would like to ask the witness one or two questions."

"The Court: I think not."

As we gather from appellant's brief, his complaint is that the admissions made by defendant to the officer in the conversation had with him constituted confessions, and as such were inadmissible in evidence for want of proper foundation laid. Assuming the statements made by defendant, as testified to by the witness, were confessions, we think a sufficient foundation was laid to entitle them to admission as evidence. Moreover, an examination of the statements made by defendant in the conversations to which the witness testified clearly shows that they were not confessions of guilt; indeed, noth-

ing that he said could be so construed. For this reason it was not necessary to make the proofs required as a prerequisite to introducing a confession in evidence. (*People* v. *Wilkins,* 158 Cal. 530, [111 Pac. 621]; *People* v. *Weber,* 149 Cal. 325, [86 Pac. 671]; *People* v. *Stokes,* 5 Cal. App. 211, [89 Pac. 997].)

Certain instructions to the jury requested by defendant were refused, or given as modified. Where such instructions were refused the subject thereof appears to have been fully and fairly covered by other instructions given. Hence, conceding the instructions requested to have been correct and applicable to the case, nevertheless the rights of defendant could not have been prejudiced by the refusal to give the same. Of the requested instructions given as modified, the changes therein appear to have been by running a line through such portion as was elsewhere given, or by the court deemed improper. As so modified, the instructions, taken with those given, were correct, full, and fair statements of the law applicable to the case. Assuming that defendant was entitled to the instruction that, ''if after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror *not to vote for a verdict of 'guilty' nor* not to be influenced into voting for the single reason that a majority of the jury should be in favor of a verdict of 'guilty' '' the failure to give which, however, has been repeatedly held not error; (*People* v. *Loomer,* 13 Cal. App. 660, [110 Pac. 466]; *People* v. *Singh,* 20 Cal. App. 150, [128 Pac. 420]; *People* v. *Fisher,* 16 Cal. App. 271, [116 Pac. 688]), the modification thereof by striking out the part underscored left the instruction complete and unobjectionable, the jurors being correctly told that the fact that a majority of their number favored a verdict of guilty should not in itself influence any one of them who entertained a reasonable doubt as to defendant's guilt to so vote. It is also claimed the defendant's rights were prejudiced by permitting the jury to take these instructions so modified to the jury-room, an inspection of which disclosed the parts thereof so stricken out. There is nothing in the record showing that the instructions were so delivered to the jury.

Assignments are made of misconduct on the part of the court, it being claimed that the manner in which the rulings were made showed hostility to counsel for the defendant in the method in which he presented his client's case, and tended to humiliate counsel and prejudice the cause of defendant. Some of the rulings upon which appellant bases his claim are hereinbefore stated. Many of the questions asked by defendant's counsel were immaterial and of the most trivial nature, and while doubtless he was defending his client to the best of his ability, nevertheless his conduct of the case was calculated to try the patience of the court. While the court might have expressed its rulings in a manner indicative of less impatience and less calculated to affect the sensibilities of defendant's counsel, it cannot be said, in the absence of prejudicial error, that this alone was sufficient to prejudice the rights of defendant. As said by this court in an opinion filed June 10th, in the case of *People* v. *Costa,* 24 Cal. App. 739, [142 Pac. 508], such action on the part of the court merely accentuates prejudicial error exhibited by the record. (*People* v. *Szafcsur,* 161 Cal. 636, [119 Pac. 1083] ; *People* v. *Casselman,* 10 Cal. App. 238, [101 Pac. 693] ; *People* v. *Modina,* 146 Cal. 142, [79 Pac. 842].)

Counsel for appellant cites section 4½ of article VI of the state constitution, to the effect that no judgment in a criminal case shall be set aside for error unless, after an examination of the entire case, including the evidence, the court shall be of the opinion that the errors complained of have resulted in a miscarriage of justice. In compliance with appellant's request, we have read this provision which, however, is not, as indicated by counsel, entirely new to us, and we have likewise carefully read the record, and are convinced that it discloses no error which will justify this court in holding there has been a miscarriage of justice. Appellant's counsel have filed voluminous briefs, a large part of which is not devoted to a discussion of alleged errors contained in the record, but to the fact that defendant, a white man, has been convicted upon the uncorroborated testimony of a "heathen Chinaman" (and other matters wholly foreign to the questions presented for review), and insist that the laws of the state permitting such an outrage should be changed. The labor of the court would have been greatly lessened had counsel devoted their

time to a discussion of the alleged errors contained in the record.

The judgment herein is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 17, 1914.