[Crim. No. 976. Second Appellate District, Division Two.—September 25, 1923.]

THE PEOPLE, Respondent, v. E. A. McNABB, Appellant,

[1] CRIMINAL LAW—ROBBERY — ABSENT WITNESS — DILIGENCE — EVIDENCE.—In a prosecution for robbery, the uncontradicted and unqualified statement of a witness that another witness who had given testimony on the preliminary examination of the defendant was in Mexico and that he had received a letter from him justified the trial court in concluding that at the time of the trial the absent witness could 'not with due diligence be found within this state so as to permit the reading at the trial of the testimony given by him on the preliminary examination.

[2] ID. — VERDICT — EVIDENCE. — In such prosecution, the verdict of guilty was supported by the evidence.

---

1. Admissibility of former testimony of absent witness, notes, Ann. Cas. 1913C, 440, 464; Ann. Cas. 1917A, 658.

[3] ID.—JURIES AND JURORS—INSTRUCTION.—In such prosecution, the refusal of a requested instruction to the effect that if any one of the jurors entertained a doubt as to the defendant's guilt, he was entitled to maintain that doubt throughout.all the deliberations and that he "need not be influenced by importunities or otherwise, from other jurors during the deliberations of the jury in this case, to change your vote," was proper.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lucas F. Smith for Appellant.

U. S. Webb, Attorney-General, Thomas Lee Woolwine, District Attorney, and Buron R. Fitts, Deputy District Attorney, for Respondent.

CRAIG, J.—Appellant herein was convicted of robbery, a felony, on January 12, 1923, and from the judgment and order denying his motion for new trial, appeals. He was charged by information with having, on or about the twenty-eighth day of April, 1922, robbed, stolen, and driven away from the possession and immediate presence of one G. Pagliano, a Peerless automobile, and with having at the same time robbed and stolen from the latter a knife, jewelry, clothing, and money, of a total value of about three thousand dollars.

Considering appellant's exceptions to the testimony of accomplices, and his evidence tending to establish an alibi, it may be said that the principal ground upon which he seeks a reversal is an asserted insufficiency of evidence to connect him with the offense. A concise statement of the salient features of the evidence will best serve to fairly present the issues and a proper application of the law.

On the twenty-eighth day of April, 1922, at about midnight, one Pagliano and his wife were driving toward their home in Los Angeles in a gray Peerless automobile having engine number 17834, when, at the intersection of Eighth and Bronson Streets, three masked men drove up beside them in another automobile and ordered them to stop; one

of the men boarded the Peerless on each side, pointed guns at the occupants, ordered them to throw up their hands, and compelled them to alight; the other of the strangers remained in the bandit's car. Pagliano and wife were searched. A watch, chain, gun, and fifty dollars in money were taken from the former, and a handbag, string of pearls, and fur neckpiece from the latter, whereupon one of the men drove away in Pagliano's car, the other two disappearing in the strange machine. Upon the trial each of the victims identified articles produced as being the property taken from them at the time in question, and testified that they had since seen their Peerless automobile, but that it had been repainted black, or some dark color. Another witness testified that in the latter part of April, 1922, appellant and two other men had rented her garage, in which they subsequently placed a gray machine; that a few days later the same men drove it away, and that it had been repainted a dark color, almost black. A witness from Hollywood identified McNabb, and stated that she had known him for a period of about four years; that she had employed him as her chauffeur, and had seen him off and on practically all of the past year; that one evening during the last of April McNabb visited her home and left the fur and handbag identified by the Paglianos, which she agreed to sell for appellant.

A policeman in San Francisco arrested McNabb and one Cave in that city on July 12th and seized the Peerless car, which they were driving, at which time appellant stated . that a man named Young, whom he had known about two days, had given it to him in Salinas; the manager of the safe-deposit department of a San Francisco bank identified appellant, and testified that he had rented a box at that bank on June 16th, and produced signature and entrance cards bearing the latter's signature, with a Los Angeles address which he gave at the time; a sergeant of police from San Francisco stated that appellant told him he had come from Monterey about July 10th, that he had been living at San Diego, and was never in Los Angeles except for three days while passing through, that he had gotten the Peerless car from a man at Salinas; an operator's card bearing the name S. E. Young, dated May 29th, and Pagliano's knife, were taken from the person of appellant.

Mrs. Pagliano identified two keys to a San Francisco safe-deposit box, a pencil and note-book, handkerchief, and vanity-case, which she testified were in her handbag when stolen, and she testified that she had received these articles from the San Francisco bank shortly after the hold-up; a Los Angeles police detective testified that appellant told him in San Francisco on July 18th that the Peerless car had been given him at Salinas two days prior to his arrest; when reminded that the arrest had been made on the 12th of July, and the date of the operator's card was mentioned, McNabb then stated that he had received the machine two days before leaving Los Angeles, and that he personally obtained the card and signed the name S. E. Young thereto; that he rented the deposit box in the name of Young to correspond with the card.

One Cecil Coons, a boy, had previously been arrested for this same offense, had testified at the preliminary examination, pleaded guilty in superior court, and was sent to the George Junior Republic, from which he escaped and disappeared. In his said testimony he identified Pagliano and his wife, and McNabb, and swore that the latter came to his home on the night of April 28th, from whence the witness, his brother, Floyd Coons, and McNabb went to Eighth and Bronson Streets in McNabb's light six Studebaker machine, and held up the Paglianos; he recognized the stolen articles, and stated in minute detail the facts as related by both victims of the robbery, further testifying that McNabb had left some of the loot at the Coons residence overnight, and had taken it away in the morning; that he went to the Hollywood address with appellant when the latter delivered a bundle at that place; that he and McNabb rented a garage, where the Peerless was stored, and that they procured and applied black paint to the body.

Floyd Coons also testified at the preliminary to the same details, and upon a plea of guilty in superior court was sentenced to the penitentiary. He was sworn as a witness for the defendant, but flatly contradicted and denounced as false practically every material statement made by him at the preliminary hearing. He had previously stated that no immunity had been promised him, but upon the trial he testified that his incrimination of McNabb had been perpe-

trated because the state was unable to apprehend Sam Young, who, he said, was the guilty man.

The mother of the Coons boys testified that she knew McNabb, and that he was at her house frequently, particularly on the night of the holdup.

The defendant denied any knowledge of the robbery, or acquaintance with the Coons boys, or their mother, and denied that he had ever visited their home; he admitted having registered at a hotel in Los Angeles under the name of Forrest, which is significant in view of the fact that Floyd Coons testified at the preliminary examination that he knew McNabb as Forrest; appellant testified that a friend named S. E. Young, from Mexicali, had requested him to dispose of the articles which he had taken to the Hollywood witness; that he drove the Peerless from Los Angeles to San Francisco for Young, on or about May 30th; admitted having told the detectives that he obtained the car at Salinas; that he was frightened when arrested, and thought something was wrong; he denied having previously seen the Paglianos.

Appellant further testified, and produced a witness to prove, that he was at La Boheme café, in Los Angeles, on the 28th of April, from early in the evening until 12 or 1 o'clock.

It is contended upon this appeal that Cecil Coons, a confessed robber, and accomplice, was the only connecting witness between the appellant and the offense; that his testimony stood alone, without corroboration, and as such should be received with distrust and suspicion, as to which the trial court erred in instructing the jury and in refusing instructions requested. It is further contended that a defendant is entitled to be confronted with witnesses against him, and that there was no sufficient showing of diligence in searching for Cecil Coons to entitle his prior testimony to admission upon the trial.

Upon this latter point the officer from George Junior Republic testified that Cecil Coons escaped November 14, 1922, and had not since been seen, nor did the witness know where to find him; a police detective had a bulletin issued, bearing his picture and description, and circulated the same, asking any officer to arrest him, and communicated with relatives of Coons, but could not locate him; an investigator for the

district attorney attempted to serve a subpoena, consulting various directories, and making inquiries, without success; his brother Floyd testified that Cecil was in Mexico, and that he had received a letter from him written in Mexicali. Section 686 of the Penal Code provides that the deposition of a witness on the preliminary examination may be read at the trial ''upon it being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found within the state.'' **[1]** The uncontradicted and unqualified statement of the brother justified the trial court in concluding that at the time of the trial the witness Cecil Coons could not with due diligence be found within the state of California. (*People* v. *Buckley*, 143 Cal. 375 [77 Pac. 169].)

The jury were very carefully instructed that whether one is an accomplice is a question to be determined by the jury from all the testimony and circumstances, and that even if they should believe the testimony of an accomplice to be true, it would not support a verdict of guilty unless they further believed there was other and corroborating evidence tending to connect the defendant with the offense; that from all of the evidence in the case they must believe the defendant guilty beyond a reasonable doubt before they could convict; the jury were instructed that if they believed the witness had falsified on any material point they should treat all of his testimony with distrust and suspicion, and reject it all unless convinced that the witness had in other particulars spoken the truth; that a witness is said to have been corroborated when it is shown that his testimony corresponds with representations of some other witness, or comports with some facts otherwise known or established by evidence. It is conceded that Cecil Coons was an accomplice, and defendant requested an instruction to that effect, but the same was refused. However, the defendant's conflicting explanations of possession of the stolen property, his acts, conduct, and declarations, and other suspicious circumstances, as to each and all of which the jury were fully instructed, may well have satisfied them of the defendant's guilt, regardless of the testimony of Cecil Coons. Furthermore, the same considerations doubtless led them to believe the testimony first given by Floyd Coons, in spite (or per-

haps because) of his energetic denials at the time of the trial.

The court was amply justified in concluding from the evidence that all reasonable steps had been taken to procure the apprehension and production of Cecil Coons. This is especially so when shown by Floyd Coons, a witness for the defendant, that Cecil was in Mexico. Apparently state, county, and city officers had searched for the fugitive and exerted extraordinary efforts toward his recapture. They at least displayed a diligence satisfying statutory requirements for the production of ordinary witnesses by subpoena. After personal inquiry and circularization it appeared that the party sought was not in the United States. We fail to perceive what more could have been done to show the court that Cecil Coons could not with due diligence be found within the state. It furnished sufficient foundation for the introduction of his testimony given at the preliminary hearing.

[2] We think the verdict was abundantly supported by the evidence.

Appellant next complains of the trial court's refusal to give the following instruction requested by him:

"The court instructs you that, if any one of you entertain a doubt as to the defendant's guilt, you are entitled to maintain that doubt throughout all the deliberations of the jury, and need not be influenced by importunities, or otherwise, from other jurors during the deliberations of the jury in this case, to change your vote. You are entitled to hold out for an acquittal during all deliberations."

[3] It will be noted particularly that the instruction here involved would impress upon each juror that he "need not be influenced by importunities, or otherwise, from other jurors," which is not the law in this state, and we fail to find any authority elsewhere going so far. This instruction would bar discussion among jurors and deter each juror from allowing the fair arguments of his fellow-jurors to weigh in the formation of an opinion as to the guilt or innocence of the accused. If the requested instruction had been in the form often given, to the effect that the jury could not convict if any individual juror was not convinced of the defendant's guilt beyond a reasonable doubt, it would have been proper, yet its refusal would not have constituted

reversible error. (*People* v. *Walton,* 53 Cal. App. 35 [199 Pac. 824]; *People* v. *Svendsen,* 25 Cal. App. 1 [142 Pac. 861]; *People* v. *Singh,* 20 Cal. App. 146 [128 Pac. 420].)

The other requested instructions contended for were covered by those which had been given, and we think we have already passed upon any remaining points made by the appellant.

The judgment and order denying a new trial are affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 20, 1923.