[Crim. No. 158.    Second Appellate District.—June 21, 1910.]

THE PEOPLE, Respondent, v. FRED LOOMER, Appellant.

CRIMINAL LAW—MURDER—IMPANELMENT OF JURY—EXHAUSTION OF JURORS IN DEPARTMENT PANEL—COMPLETION FROM CODEPARTMENT.—In the impanelment of a jury upon a criminal trial for murder, where the impanelment of the jury was incomplete and the panel was exhausted in the department of the superior court in which the trial was had, the panel may be completed from the trial jury panel summoned in another department of the same superior court.

ID.—SUPPORT OF VERDICT—CONFLICTING EVIDENCE.—Where the defendant relied upon self-defense, and the evidence was conflicting, and the testimony for the people tends to prove the guilt of the defendant, this court will not disturb a verdict finding the defendant guilty of murder in the second degree.

ID.—DEFORMITY OF DEFENDANT—PROOF AT TRIAL—PROPER REFUSAL OF
MOTION TO EXHIBIT UNCLAD BODY TO JURY.—Where the deformity
of the body of the defendant in having one limb shorter and smaller
than the other was proved at the trial by his own testimony and by
his physician's uncontradicted testimony, the court did not err in re-
fusing his motion for leave to exhibit his unclad body to the jury
for the purpose of exhibiting the deformity so proved. The sub-
stantial rights of the defendant were not prejudiced by such ruling.

ID.—REQUESTED INSTRUCTIONS SUBSTANTIALLY EMBODIED IN CHARGE.—
The court did not err in refusing instructions requested by the de-
fendant which, so far as correct, were substantially embodied in the
instructions given, which, taken as a whole, are not only full and
complete, but well calculated to protect and guard the defendant
in securing a fair and impartial consideration at the hands of the
jury.

ID.—PROPER INSTRUCTION AS TO THREATS OF DECEASED.—In view of the
evidence, it is held that the court properly instructed the jury that
"previous threats of the deceased toward the defendant, however vio-
lent they may have been, are not of themselves sufficient to justify
the defendant in slaying the deceased; to excuse or justify him, he
must have acted under an honest belief that it was necessary at the
time of taking the life of the deceased, in order to save his own or
himself from great bodily injury, and it must appear that there was
reasonable cause to excite this apprehension on his part."

ID.—THREATS OF DECEASED AGAINST FATHER OF DEFENDANT—DUTY OF
DEFENDANT TO REQUEST INSTRUCTIONS.—Where there was some evi-
dence tending to show threats and acts of hostility against the
father of the defendant, between whom and deceased there was a
dispute about a crop of corn which deceased was cutting, as well as
a dispute with defendant concerning the same crop, if defendant
wished instructions given concerning his defense of his father, as
well as of himself, it was his duty to request such instructions, if he
deemed the evidence sufficient to warrant the same.

ID.—REQUEST AS TO JUSTIFIABLE HOMICIDE.—When the court, at de-
fendant's request, gave an instruction as to justifiable homicide, in
the language of section 197 of the Penal Code, and he did not ask
further elaboration of that section, nor any additional instructions
concerning defense of his father, his complaint that the court failed
to so instruct cannot now be entertained upon appeal.

ID.—PROPER REQUEST AS TO DUTY OF EACH JUROR—REASONABLE DOUBT.
A requested instruction that: "In criminal cases, the law requires
the concurrence of twelve minds in the conclusion of guilt. Before
a verdict of guilty can be legally rendered, each member of the jury
must be satisfied beyond a reasonable doubt of the guilt of the de-
fendant. Therefore, if any one of the jurors, after having con-
sidered all of the evidence, and having consulted with his fellow-
jurors, should entertain a reasonable doubt of the guilt of the de-

fendant, as charged in the information, he should not, under his oath, consent to a verdict of guilty. Each juror should act upon his individual judgment upon the facts of the case, and he is in duty bound not to surrender his conviction if he entertains a reasonable doubt as to the guilt of the defendant, merely because the other jurors entertain no doubt as to his guilt"—was proper, and should have been given.

ID.—IMPROPER REFUSAL OF REQUEST—ABSENCE OF PREJUDICIAL ERROR—INSTRUCTIONS GIVEN—POLLING OF JURY.—The improper refusal of such request was not, under the circumstances of this case, an error which prejudiced the substantial rights of the defendant, and therefore, under the provisions of section 1258 of the Penal Code, it should be disregarded. Where the jury were fully instructed as to the law of "reasonable doubt," and as to the "presumption of innocence," and other instructions were given which were calculated to impress upon each juror the duty which devolved upon him, to be guided by the evidence and the instructions of the court, and each juror was polled when the verdict was rendered, it cannot be presumed that any member of the jury rendered his verdict in violation of his oath and the instructions of the court.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. George R. Davis, Judge.

The facts are stated in the opinion of the court.

Henry H. Roser, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—By information the defendant was charged with the crime of murder. Upon trial therefor he was convicted of murder in the second degree, and by judgment of the court sentenced to twenty years' imprisonment. He appeals from the judgment and an order denying his motion for a new trial.

The case was tried in department 12 of the superior court of Los Angeles county. It appears that after five men had been selected from the panel of jurors summoned to serve in this department and sworn to act as jurors in the trial of the case, the clerk then drew from the trial jury-box of department 12 four additional names of veniremen, which ex-

hausted the panel of jurors summoned to serve in said department. Thereupon the court made an order requiring the attendance in department 12 of the trial jury panel summoned for service in department 11 of the court, and from this panel the clerk proceeded to draw the names of three jurors, who, together with the four last drawn from the jury-box of department 12, were duly sworn to answer questions touching their qualifications as jurors in the case. This proceeding seems to have been in strict accord with the provisions of section 248, Code of Civil Procedure, which provides as to counties having two or more judges of the superior court that, ''when a panel of jurors is in attendance for service before one or more of the judges, whether impaneled for common use or not, the whole or any number of jurors from such panel may be required to attend and serve in the trial of cases, or to complete a panel, or jury, before any other of the judges.'' The jury was incomplete, there being only nine men in the jury-box and the panel of department 12 was exhausted. Defendant was entitled to have the box full before exercising his peremptory challenges. Clearly, the action of the court was without error.

Appellant claims the evidence adduced at the trial was insufficient to justify the verdict of the jury, in that it shows that in self-defense defendant was justified in killing deceased. The circumstances surrounding the killing were as follows: Defendant and his father were tenants of certain lands adjoining which deceased was, as a tenant of the same owner, farming a tract of land. A controversy between the parties arose over their respective rights to a piece of land, the right to farm which was claimed by both defendant's father and deceased. The latter, it seems, had put in a crop of corn on the portion of the property involved in the dispute, and defendant's father claimed to be entitled to one-third of the crop as rental. This was denied by deceased. At the time of the killing of deceased he was engaged with a corn-knife or sickle cutting corn which stood in stalk, when defendant, accompanied by his father, went to the place where deceased was so engaged, and, according to defendant's evidence, an altercation ensued in which all three took part. Appellant's defense was based upon justifiable homicide, his contention being that deceased did or was about to attack

13 Cal. App.—42

him and his father with the corn-knife with which he was engaged in work, and believing that both he and his father were in imminent danger of great bodily harm at the hands of the deceased from such attack, he, in self-defense, drew a revolver which he had upon his person and shot deceased, with the result that death ensued almost immediately there-after. As usual in such cases, the evidence is conflicting. No good purpose could be subserved by repeating it here. Suffice it to say that the testimony adduced on the part of the people tends in some degree to prove the guilt of defendant. While the jury might properly have reached a different conclusion, nevertheless, under the circumstances here presented, it is not within the province of this court to disturb the verdict upon the ground that the evidence is insufficient to support it. (*People* v. *Fitzgerald,* 138 Cal. 39, [70 Pac. 1014].)

There was no error in the ruling of the court denying defendant's motion to exhibit his unclad body to the jury for the purpose of showing that he was physically deformed, in that one leg was considerably shorter than the other and the limb much smaller in circumference. So far as such facts were material, he had the benefit of his own and his physician's full and uncontradicted testimony touching the matter. At most, such an exhibition would have afforded merely cumulative evidence of facts concerning which there was no dispute. In no event were the substantial rights of defendant prejudiced by the ruling.

The defendant requested the court to give instructions covering upward of thirty pages of the transcript, nearly all of which were refused. Appellant insists that such refusal as to a number of the instructions constituted error. We have carefully examined each and every one of the alleged erroneous rulings, and, with two exceptions hereafter considered, find that appellant's contention in this regard merits no discussion other than to say that where such requested instructions correctly stated the law, we find them, in substance, embodied in the instructions given, which, taken as a whole, are not only full and complete, but well calculated to protect and guard the defendant in securing a fair and impartial consideration of his rights at the hands of the jury.

It is claimed the court erred in instructing the jury that, "Previous threats or acts of hostility of the deceased toward the defendant, however violent they may have been, are not of themselves sufficient to justify the defendant in slaying the deceased; to excuse him, or justify him, he must have acted under an honest belief that it was necessary at the time to take the life of the deceased, in order to save his own or himself from great bodily injury, and it must appear that there was reasonable cause to excite this apprehension on his part," as well as in the giving of other instructions predicated upon the hostile acts of deceased toward defendant without any reference being made therein to his father. His contention is that "the language of all these instructions should have been made to apply to the father as well, and that threats or menaces made by deceased against the father or defendant were of avail to defendant if, at the time of the killing, his parent was actually assailed, or defendant had sufficient evidence to convince a reasonable person, at that time, that his parent was in imminent danger of great bodily injury, or of losing his life." There was some evidence tending to prove threats and acts of hostility on the part of deceased toward the father of defendant, who accompanied him, and that in shooting deceased, defendant did so in defense of his father, whom he had reason to believe was about to be attacked by deceased. Conceding that under the evidence an instruction in effect as now suggested by appellant would have been proper, nevertheless, it was his duty to have requested it, if he deemed the evidence sufficient to warrant the same. The instruction above quoted as given was, under the evidence, a proper one. The court, at defendant's request, gave an instruction upon justifiable homicide in the language of section 197, Penal Code. Defendant did not ask further elaboration of the provision of said section, nor the additional instructions which he now suggests should have been given. It was his duty to request them, if he deemed them necessary or proper. Not having done so, his complaint that the court failed to so instruct cannot now be entertained. In the case of *People* v. *Matthai,* 135 Cal. 446, [67 Pac. 696], the court, in discussing a like question, says: "The court charged upon justifiable homicide in the language of the code. If the defendant desired an elaboration of the principles there

expressed, he should have proposed his instructions to that end." To the same effect is *People* v. *McLean,* 84 Cal. 482, [24 Pac. 32] ; *People* v. *Weber,* 149 Cal. 346, [86 Pac. 671].

Defendant requested the court to give an instruction to the jury as follows: "In criminal cases, the law requires the concurrence of twelve minds in the conclusion of guilt. Before a verdict of guilty can be legally rendered, each member of the jury must be satisfied beyond a reasonable doubt of the guilt of the defendant. Therefore, if any one of the jurors, after having considered all of the evidence and having consulted with his fellow-jurors, should entertain a reasonable doubt of the guilt of the defendant, as charged in the information, he should not, under his oath, consent to a verdict of 'guilty.' Each juror should act upon his own individual judgment upon the facts of the case, and he is in duty bound not to surrender his own convictions, if he entertains a reasonable doubt as to the guilt of the defendant, merely because the other jurors entertain no doubt as to his guilt." With reference to a similar instruction, the supreme court, speaking through Chief Justice Beatty in the case of *People* v. *Dole,* 122 Cal. 495, [68 Am. St. Rep. 50, 55 Pac. 585], says: "This is a correct statement of the duty of a juror, and should have been given. If any juror needed an instruction upon this point, it was harmful to refuse it; if no juror needed the instruction, it would have been harmless to give it." In a concurring opinion in the case of *People* v. *Howard,* 143 Cal. 323, [76 Pac. 1118], the chief justice repeats the above-quoted language.

The instruction, for the reasons stated in the Dole case, was a proper one, and should have been given. Conceding, however, that the court erred in refusing to give it, we are, nevertheless, of the opinion that, under the circumstances of this case, the error was one which did not prejudice the substantial rights of defendant, and, therefore, under the provisions of section 1258, Penal Code, it should be disregarded. The jury were fully instructed as to what constituted a reasonable doubt, and that in case of a reasonable doubt as to defendant's guilt he was entitled to acquittal; "that the law raises the presumption of innocence, which attends the defendant throughout his trial, and which goes with the jury into the jury-room"; that it was the duty of the jury to

"consider the testimony in the light of that presumption of innocence, and that presumption must prevail to acquit the defendant, unless the state has by sufficient evidence established the guilt of the defendant to a moral certainty and beyond a reasonable doubt"; that it was the duty of the prosecution to prove beyond a reasonable doubt the truth of every material allegation in the information; that "nothing is to be presumed or taken by implication against the defendant"; that "the law presumes him to be innocent of the crime with which he is charged"; "that this case is to be determined from the evidence adduced at the trial, and from the instructions of the court, and no outside influence or statement of alleged facts, whether agreeing with the facts proved at the trial or not, is proper matter for the jury's consideration, and any such must be entirely laid aside by you in your consideration of this case." And again, "the burden of proof is upon the prosecutor; all the presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proven guilty." There were other instructions of like import, all calculated to impress upon each juror to whom instructions were addressed the duty which devolved upon him, that in reaching a verdict he should be guided by the evidence and instructions of the court. In addition to this, it appears that the jury, upon bringing in its verdict, was polled, and each individual juror asked if the verdict rendered was his verdict, to which each member of the jury responded in the affirmative. Section 604, Code of Civil Procedure, provides that, "an oath must be administered to the jurors, in substance, that they and each of them will well and truly try the matter in issue between ———, the plaintiff, and ———, defendant, and a true verdict render according to the evidence." We cannot assume that any member of the jury rendered his verdict in violation of such oath and the instructions of the court. As said by Justice Shaw in his concurring opinion in *People* v. *Perry,* 144 Cal. 756, [78 Pac. 287] : "An exception which involves nothing more important than the failure of the court to protect the defendant against the very remote contingency that some juror may so misunderstand or disregard his oath and the other instructions, or the equally remote contingency that such a juror would be prevented from

so doing by an instruction such as that here involved, does not, in my opinion, affect the substantial rights of the defendant.''

We find no prejudicial error in the record, and the judgment and order are, therefore, affirmed.

Allen, P. J., and Taggart, J., concurred