[Crim. No. 4585.   In Bank.   Feb. 2, 1945.]

THE PEOPLE, Respondent, v. SILAS J. KELSO, Appellant.

Frederic H. Vercoe, Public Defender, and William B. Neeley, Deputy Public Defender, for Appellant.

Robert W. Kenny, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

EDMONDS, J.—James Lorette, the manager of a theater, was shot while investigating the source of noises which indicated that a burglary was taking place. He died almost immediately after the attack upon him.

Silas J. Kelso, Richard R. Graham and Edward Krudy were charged jointly with the burglary of the theater and, in a second count of the indictment, with the murder of Lorette. Graham and Krudy pleaded guilty and testified for the People in the trial of Kelso, who admitted that upon each of three previous occasions he had been convicted of a felony for which he served a term of imprisonment. A jury found him guilty of both offenses and decided that each crime was of the first degree. By special verdicts the jury determined that he was armed at the time of the commission of each offense, and as it made no recommendation concerning the punishment to be suffered by him, the death penalty was imposed. Upon appeal, as grounds for reversal of the judgment, Kelso relies upon asserted errors in instructions to the jury which, he insists, prevented him from having a fair trial.

The record shows that on the evening before the murder was committed, Kelso, Graham and Krudy were in a cocktail lounge from about eight o'clock until midnight. They left in Kelso's Ford coupé. He told his companions that he knew the location of the safe in the Kinema Theatre, about two blocks distant. They drove there and parked the automobile in the alley at the rear of the building. By breaking a catch on one of the front doors in the Kinema entranceway, access was gained to the inside of the theater. According to Krudy and Graham, they more or less reluctantly followed Kelso to the stage. Then they climbed a ladder to the attic and eventually reached a room adjoining the projection room, where, at one time, the theater safe had been kept. Not finding the safe where they had expected it to be, the three went to the front

of the theater and in attempting to enter the office, broke the glass pane in a door.

The noise of the breaking glass awoke Lorette and his wife, who occupied an apartment directly above the theater entranceway. Lorette arose, slipped a pair of trousers over his pajamas, obtained a .25 caliber Colt automatic pistol from a nearby desk and proceeded downstairs. Mrs. Lorette looked out of the window and saw her husband on the sidewalk, facing the theater entranceway. She could not see anyone else. Lorette stepped closer to the building and out of his wife's view. She heard him say, ''Come out with your hands up.'' She heard voices and then two shots in rapid succession; her husband staggered back to the curb and, as he fell, she heard two more shots.

Mrs. Lorette aroused Mr. and Mrs. Holmes, who also occupied an apartment in the theater building and the three hurried down the stairs to the street. Lorette was lying on his back near the curb, his feet extended toward the theater entrance. The left sleeve of his pajama top was on fire. A hammer, a pair of pliers and a flashlight were lying on the sidewalk.

Graham and Krudy told the jury that when Lorette appeared and told them to come out, they did so. Then, from behind them, a shot was fired and they proceeded to run down the street. Soon thereafter, Kelso appeared with his car and took Graham and Krudy to the latter's home in Culver City. On the way, Kelso remarked that the man they had encountered would not talk any more.

Within an hour after Lorette was shot, police officers arrested Kelso. He was then sitting in his automobile which was parked near Culver City. They found in his pocket the pistol which had been carried by Lorette. It was loaded with six shells. Although Kelso told an officer that two months before he had purchased the weapon at San Francisco from a person whose name he did not know, Mrs. Lorette identified it as the one in the possession of her husband on the night he was killed. She testified that it was purchased by her in a pawnshop, and a sales record corroborated her testimony.

At the time of Kelso's arrest he had in his possession four empty and five fully loaded .38 caliber cartridges. In a paper bag under the seat of his automobile, they found a .38 caliber Smith and Wesson revolver, fully loaded with six cartridges. The gun had a pungent odor about it, as though it had been recently fired. In the back of his car was a hack saw which

was identified as having been taken from the projection room of the theater.

The autopsy surgeon testified that he found two bullets in the body of Lorette; another bullet was taken from Lorette's clothing. Death came almost immediately from wounds in the heart and left lung. Experts in ballistics testified that the four lethal bullets had been fired from the Smith and Wesson gun found under the seat of Kelso's car, and that they fitted the cartridges which were in his pocket at the time of his arrest. The body of Lorette showed burns on the left wrist and one of the experts stated that a shell loaded with black powder will cause fabric to burn if fired at a distance of less than three feet from the material.

Kelso did not testify nor was any evidence presented upon his behalf. He does not now claim that the evidence is insufficient to support the verdicts of conviction but he challenges the judgment upon the ground that neither the crime of murder nor the degrees of that offense were defined for the jury. He also assigns as prejudicial error the failure of the trial court to instruct the jury that they must be of unanimous agreement as to their verdict, as to the degrees of the respective offenses charged in the indictment, and as to the punishment to be imposed.

The jury was instructed that a person who causes the death of another while engaged in the perpetration of, or attempt to perpetrate, the crime of burglary is guilty of murder in the first degree. This is the mandate of section 189 of the Penal Code, and as all of the evidence tends to prove that Kelso fired the fatal shots while he was committing a burglary, no other instruction upon this subject was required. (*People* v. *Murphy,* 1 Cal.2d 37 [32 P.2d 635] ; *People* v. *Boss,* 210 Cal. 245 [290 P. 881] ; *People* v. *Perry,* 195 Cal. 623 [234 P. 890] ; *People* v. *Denman,* 179 Cal. 497 [177 P. 461] ; *People* v. *Milton,* 145 Cal. 169 [78 P. 549].)

The following instruction was offered on behalf of Kelso and refused: "The law requires a unanimous agreement of the jury before you can render a verdict in this case. This applies not only to the question of the guilt or innocence of the defendant, to the degree of the crime if the defendant is found guilty, but also as to the penalty to be inflicted if the defendant is found guilty of murder in the first degree." The failure to give this instruction constitutes prejudicial error, says the appellant. He argues that it is not improbable to as-

sume that some of the jurors might have had experience in the trial of civil cases in which a verdict may be returned upon the vote of nine members of the jury, and he points to the lack of any showing in the record of a unanimous agreement concerning his guilt and the punishment to be imposed.

The People contend that any error caused by the refusal to give the charge proposed by the appellant was cured by the instruction in which the jury was told that it must return a verdict "which will express the individual opinion of each juror." And in further support of that position the Attorney General calls attention to another instruction, which reads: "You are instructed that the people and the defendant are entitled to the individual opinion of each juror on the issue of fact in this case. It is the duty of each of you to consider and weigh all the evidence in the case and from such evidence to determine, if you can, the question of the guilt or innocence of the defendant. When you have so determined that question, you should not be influenced in giving your verdict by the mere fact that any number or all of your fellow jurors may have reached a different conclusion. . . . If, after such a full and fair discussion with them, any juror is still satisfied that his or her decision is right, he or she should say so by his verdict. If, on the other hand, after such full and fair discussion, any juror is satisfied that his original decision was wrong, then he or she should unhesitatingly abandon such decision and render his or her verdict according to such final decision."

In a criminal action, it is error for the trial court to refuse an instruction stating to the jurors that a verdict, both as to the guilt or innocence of the defendant and the degree of the offense with which he is charged, may be returned only upon their unanimous agreement (*People* v. *Howard,* 143 Cal. 316, 324 [76 P. 1116] ; *People* v. *Dole,* 122 Cal. 486, 495 [55 P. 581, 68 Am.St.Rep. 50]), and when one who has been convicted appeals from the judgment which has been entered against him following a trial in which such an instruction was rejected, the question for decision is whether, considering all of the circumstances of the case, the error was prejudicial. (*People* v. *Ferdinand,* 194 Cal. 555 [229 P. 341] ; *People* v. *Loomer,* 13 Cal.App. 654 [110 P. 466].) For the California Constitution declares: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, in-

cluding the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 4½.)

▮ Where the evidence of guilt is clear and convincing, and it appears that a different verdict would not otherwise have been probable, ordinarily a judgment of conviction will not be reversed solely for errors in or the failure to give an instruction. (*People* v. *Cook,* 15 Cal.2d 507 [102 P.2d 752]; *People* v. *Madison,* 3 Cal.2d 668 [46 P.2d 159]; *People* v. *Mc-Evers,* 53 Cal.App.2d 448 [128 P.2d 93]; *People* v. *Marvich,* 44 Cal.App.2d 858 [113 P.2d 223]; *People* v. *Ratterman,* 38 Cal.App.2d 598 [101 P.2d 750]; *People* v. *Ollinger,* 27 Cal. App.2d 381 [80 P.2d 1015]; *People* v. *Shellenberger,* 25 Cal. App.2d 402 [77 P.2d 506]; *People* v. *Montoya,* 17 Cal.App.2d 547 [62 P.2d 383]; *People* v. *Weaver,* 96 Cal.App. 1 [274 P. 361]; *People* v. *Stuckrath,* 64 Cal.App. 84 [220 P. 433].) In applying that rule to the facts of the Cook case, *supra,* evidence convincingly showing that the appellant went to the place of assault with the intention of committing the crime of robbery was mentioned, as was also the fact that "he produced no evidence on his own behalf nor any which tended to show mitigation, excuse or justification for the commission of the crime with which he was charged." Accordingly, it was determined, the refusal of the trial court to give an instruction proposed by Cook did not warrant a reversal.

▮ The record in the present case likewise compels the conclusion that the refusal to give the instruction offered by Kelso did not prejudice his rights nor result in any miscarriage of justice. He offered no defense to the charges made against him nor any evidence whatever in mitigation of punishment for his cold-blooded acts. The evidence is without conflict and convincingly, if not conclusively, shows that when surprised in the commission of the burglary in which he encouraged his reluctant companions to participate, without any justification or excuse whatever, at close range he fired four times at Lorette. Under such circumstances it is difficult to believe that any one of the jurors could have entertained any doubt whatever as to his guilt.

And although the instruction given by the trial judge did not cure the failure to direct the jury concerning the requirement of a unanimous agreement, the entire charge may be considered with the other circumstances of the case in determining whether prejudice resulted. (*People* v. *Ferdinand,*

*supra.*) In two instructions the trial judge stated that the verdicts must express "the individual opinion of each juror" and unquestionably the determination against Kelso was reached by a unanimous vote. Indeed, the appellant does not assert that less than twelve of the jurors found against him, nor. does he complain of any failure to follow the statutory procedure. It must therefore be assumed that when the jurors returned from their deliberations they were asked by the judge or the clerk whether they had agreed upon their verdict as required by section 1149 of the Penal Code; that they answered in the affirmative; and that after each one of the verdicts was received the clerk recorded it in the minutes, read it to the jurors and was told by them that the verdict as recorded was their decision upon the issues submitted to them. (Pen. Code, § 1164.) Moreover, counsel for the appellants expressly waived his right to poll the jury, as he might have done if he questioned the votes by which the verdicts had been found.

The judgment and the order denying a new trial are, and each of them is, affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.