[Civ. No. 21131. First Dist., Div. One. April 7, 1964.]

JOSEPH MIRAGLIA et al., Plaintiffs and Appellants, v.
FERD W. CALLISON, Defendant and Respondent.

Lewis & Stein and Marvin E. Lewis for Plaintiffs and Appellants.

Edward L. Lascher and Heily & Blase as Amici Curiae on behalf of Plaintiffs and Appellants.

Bronson, Bronson & McKinnon and Ernest M. Thayer for Defendant and Respondent.

BRAY, P. J.—Plaintiffs appeal from a judgment, after jury verdict,[1] in favor of defendant in an action for wrongful death.

### QUESTIONS PRESENTED.

1. Was the jury improperly impaneled?
2. Was the giving of an instruction on contributory negligence error?

### RECORD.

Plaintiffs are the heirs of Rose Miraglia, deceased. Their complaint alleged that defendant hospital had negligently, carelessly, wantonly and recklessly cared for the deceased, as

---

[1] Plaintiffs' notice of appeal states that they appeal from a "judgment of non-suit." Obviously this is a clerical error, as the judgment was entered after a verdict by a jury.

a result of which the deceased fell from her hospital bed, suffered a broken hip and other injuries, and died. Defendant answered, admitting the fall, denying any negligence and alleging contributory negligence on the deceased's part. The jury found in favor of defendant. A motion for new trial was denied.

1. THE JURY.

The procedure followed in this case is the standard procedure used in the San Francisco Superior Court. The attorneys in the case were notified that this case was a "standby" for possible trial that day. This meant that the attorneys and their clients should appear in the department of the presiding judge at 10 a.m. and "standby" until 11. If no department was available at that time they would be required to return the next day and again "standby."

Present in the presiding judge's department was a panel of jurors that had been called to hear cases in the various departments of the superior court that day. Their names were placed in a jury box by the clerk and were drawn out by him for each of the departments open that day for jury trials.

Cases preceding this were sent by the presiding judge to various departments and the names of the jurors selected from the box for service in those departments were sent to the respective departments. When all available departments were assigned cases and the jurors sent to those departments the panel was exhausted. Thereafter, the parties and their counsel stood by waiting to see if any department would open up by termination or settlement of a case assigned to it.

At about 11 a.m. counsel were notified that the department presided over by Honorable Carl Allen was available for the reason that a case which was to have begun trial that day had been settled. Counsel and the parties repaired to that department.

The names of 12 jurors who were to have heard the case just settled were placed in the courtroom jury box. The names of six other jurors called for the current day and seated in the courtroom were likewise placed in the jury box. Thus, as the trial started, there were 18 jurors' names in the jury box. After 12 names had been drawn by the clerk from the jury box (of which apparently seven were from the original 12)[2] and those jurors sworn on *voir dire*, the court and

2So-called for convenience in designation.

counsel went into chambers. Plaintiffs challenged the panel on the grounds that the 12 jurors above mentioned had not been called to try the cases which had been assigned to courts on the day in question but were left over from a panel called to try cases on the previous Friday, and had been impaneled by counsel in the prior case to try one of the cases on Friday's calendar, which case was continued to this day (Monday) for trial. Thus the original 12 jurors were not part of the "panel" called for service on the day of trial of this cause. Therefore they could not be used in this or any case to be tried this day other than the one which on Friday they had been selected to try.

Plaintiffs' counsel further stated that he had been advised that the 12 jurors from the settled case had been chosen in that case because they were "conservative" jurors.[3] He called the court's attention to the fact that there were only 18 names in the jury box; "Generally you have a panel of twenty-four." The court then stated that there would be other jurors coming in during the morning.[4] Discussion was then concentrated on the use of the original 12 jurors, and no objection was made to the fact that only 18 names were in the box. The court overruled the objection to the panel.

The *voir dire* then proceeded. After plaintiffs had used four peremptory challenges, defendant three, and there were 11 prospective jurors seated in the jury box, the trial jury box was exhausted. By this time other jurors had come into the jury room. Their names were then put in the jury box and drawn out as required until the jury to try the case was selected. Prior to their examination the court informed the new jurors as to the character of the case. Plaintiffs exhausted their peremptory challenges.

There is no merit to plaintiffs' contention that in San Francisco Superior Court jurors who had been originally summoned for a particular day and then instructed to return for a subsequent day, either for the continuance of a trial in which they had been selected or otherwise, cannot act in any case going to trial on the latter day. To hold otherwise would give no meaning to section 248 of the Code of Civil Procedure. That section reads: "In any county or city and

---

[3] Plaintiffs admitted on appeal that the trial court could not take any notice of the alleged characterization of these jurors.

[4] The practice was for jurors as excused, challenged in, or released from other departments to be sent to departments which had not yet completed the selection of jurors to try the particular case.

county, having two or more judges of the superior court, or in any judicial district, or city and county, in which a municipal court having two or more judges is established, a separate panel of jurors may be drawn, summoned and impaneled for each judge, or any one panel may be drawn, summoned and impaneled by any one of the judges, for use in the trial of cases before any two or more of the judges, as occasion may require. In such counties, judicial districts, or cities and counties, when a panel of jurors is in attendance for service before one or more of the judges, whether impaneled for common use or not, the whole or any number of the jurors from such panel may be required to attend and serve in the trial of cases, or to complete a panel, or jury, before any other of the judges. If one of the judges has a separate panel of jurors, no part thereof shall, without his consent, be taken to serve before another judge. When less than the whole number of jurors available from such panel will be required to complete a jury or juries in a case or cases called for trial on any particular day, the court may make and enter in its minutes an order determining the number of jurors required and thereupon, in open court, the clerk of the court shall draw from the box referred to in section 246 of this code the number of names of jurors so required. Thereupon such jurors shall be instructed in the manner ordered by the court to attend and serve in the trial of such case or cases.'' It will be noted that section 248 states ''when a panel of jurors is *in attendance* for service. ...'' (Italics added.) The 12 original jurors were in attendance for service.

It would be unreasonable that where, as here, 12 jurors, who have been originally properly summoned and who are in attendance upon the particular department, and who are not being used, should not be used merely because they had previously been chosen to try a particular case which had been dismissed and their services no longer required therein.

██ Plaintiffs contend that section 246, Code of Civil Procedure, does not permit of the procedure used here. That section provides in relevant part: ''At the opening of court on the day trial jurors have been summoned to appear, the clerk shall call the names of those summoned, and the court may then hear the excuses of jurors summoned. ... The clerk shall then write the names of the jurors present and not excused upon separate slips or ballots of paper, and fold such slips so that the names are concealed, and there, in the presence of the court deposit the slips or ballots in a box, which must be kept sealed or locked until ordered by the court to be

opened.'' That section was enacted long prior to the enactment of section 248.[5] It relates to the procedure where the jurors are originally summoned to appear in a particular department of the court, and not to the situation provided for in section 248 where jurors are summoned to the presiding judge's department to be distributed where needed. Section 246 is silent with respect to borrowing jurors who have qualified on a prior day and must be read in the light of section 248. The jurors in question were on call to serve when requested to do so. There is nothing in the statutes stating that *only* jurors called for a particular day may serve.

Section 225, Code of Civil Procedure, provides in relevant part: ''The sheriff, marshal, or such attaché ordered by the court, as soon as he receives the list or lists of jurors drawn, shall summon the persons named therein to attend the court at the opening of the regular session thereof, or at such session or time as the court may order. ... Once a person has been so summoned, the specific time and place of his appearance may be modified or specified by order of the court and notification thereof given by either oral, written, telephonic, or telegraphic communication.''

▉ By the time this case was called all of the prospective jurors had been processed as required by the code. By the express terms of section 225, ''... the specific time and place of . . . [a juror's] appearance may be modified or specified by order of the court. ...'' The 12 original jurors had been summoned as part of the ''pool'' and called for service a prior day in Judge Allen's court, and were ordered to serve on this Monday. Absent a showing that this group of jurors had somehow been handpicked by any official for this particular trial, and absent a showing (which plaintiffs did not attempt to make) that there was something wrong with the individuals themselves, there was no error in this procedure. The statute was substantially complied with. ▉ As appears in *People* v. *Sowell* (1904) 145 Cal. 292 [78 P. 717], substantial compliance with the statutes is all that is required. Only material departures should be a successful ground of challenge. ''Material departures are only such as affect the substantial rights of a defendant in securing an

[5]Section 246 was originally enacted in 1872, repealed and reenacted substantially in the same form in 1880, and amended in 1917. This last amendment deals with the court's discretion in excusing jurors, a matter not pertinent here. Section 248 was first enacted in 1907, and amended in 1933, 1951 and 1955.

impartial jury.'' (P. 296.) ■ No showing is made that the jury in this case was not an impartial one, or that the system of selection has any inherent inequity. The mere fact that it decided against plaintiffs does not make it partial.

. Nor does any reason appear why the day upon which a particular panel is called to serve should have any legal significance in the context of this case. ■ Section 210, Code of Civil Procedure, provides that jurors selected by the court for jury duty are ''regular jurors'' and shall serve for one year and until other persons are selected and returned. Thus, one's name on the yearly jury list for the county imposes an obligation upon the prospective juror to serve, whenever called, over an extended period of time. (See *Halsey* v. *Superior Court* (1907) 152 Cal. 71 [91 P. 987].) In practice, however, the length of actual service is generally left to local authorities. (5 Stan.L.Rev. 247, 261-265, 266.) In San Francisco, this service period after being summoned as part of a pool is never longer than 90 days. ■ Applicable here is the language of Justice Field in the old case of *Thrall* v. *Smiley* (1858) 9 Cal. 529, 537: ''The object of the law is to secure honest and intelligent men for the trial, and it is of no practical consequence in what order, or at what time during the term, they are summoned.'' The jurors here complained of were equal and interchangeable with all other jurors called for that year, had been properly summoned, and were clearly serving within the period of service contemplated by the custom and practice in San Francisco. The trend of the law is toward efficient and economical jury selection. ■ Unless plaintiffs can show that these original 12 jurors were in some manner specially selected or legally different from those remaining in the panel box for the day in question, no error is committed when those names are placed in the draw box of a given department.

*People* v. *Edwards* (1894) 101 Cal. 543 [36 P. 7] ; *People* v. *Wong Bin* (1903) 139 Cal. 60 [72 P. 505], and *People* v. *Compton* (1901) 132 Cal. 484 [64 P. 849], are not in point. They applied to procedure which the later adoption of section 248 changed. Section 248 obviously was adopted to overturn the results in these cases, particularly the latter two.

In *People* v. *Loomer* (1910) 13 Cal.App. 654 [110 P. 466] (decided after the adoption of section 248) after five men had been selected and sworn in from the panel of jurors summoned to serve in department 12, the department where the case was being tried, the clerk then drew from the trial jury box of the department four additional names of venire-

men, which exhausted the panel of jurors summoned to serve in that department. Thereupon the court ordered the attendance of the trial jury summoned for service in department 11 and from this panel the clerk of department 12 proceeded to draw the names of three jurors, who together with the last four drawn from the jury box of department 12 were sworn to answer questions touching their qualifications as jurors in the case. The court approved of this procedure as complying with section 248. In *Jackson* v. *Superior Court* (1937) 10 Cal.2d 350, 358 [74 P.2d 243, 113 A.L.R. 1422], the exact procedure as that followed in *Loomer* was used and was there approved.

A litigant has only the right to select from among fairly selected, qualified and impartial prospective jurors. (See generally 29 Cal.Jur.2d, § 68, pp. 578-581.) That right does not extend to the selection of any particular prospective juror. He must take from among those out of that total group chosen by lot who are presented to him through the statutory process. Each juror, by hypothesis, is an impartial equal with the next juror and interchangeable with him and with all other jurors. It is a well-settled proposition of law that a litigant's right "... is to a fair and impartial jury, not to a jury composed of any particular individuals. [Citation.] He cannot complain if he is tried by an impartial jury, and can demand nothing more." (*People* v. *Shannon* (1928) 203 Cal. 139, 142 [263 P. 522].)

The fact that a juror has been challenged in another case, or another department, has no necessary relationship to his qualification or impartiality in any particular case. The room in which a prospective juror sits can have no relevant connection to his qualifications. Each situation must be judged on its own merits. Thus, presumably the leftover jurors in the case at bench were equivalent to any other that plaintiffs may have drawn and no prejudice can be shown.

So far as requiring that the original 12 jurors' names should have been placed in the presiding judge's trial jury box, plaintiffs are in no position to complain of the failure to do so. At the time that they were notified that Judge Allen's department was available because of the settling of the jury case then pending, they knew that the jurors which would serve them must necessarily come from other departments and Judge Allen's department, and that none of them would come from the presiding judge's department.

We find nothing in the codes nor in the cases holding that

it was error for the court to place on the trial panel the original 12 jurors.

Plaintiffs now make certain other objections to the manner of selection of the jury. All of them were ones which if called to the attention of the trial court could have been cured. No objection to them having been made in the trial court, and that court not having had an opportunity to rule on them, they cannot be considered for the first time on appeal. Plaintiffs' counsel expressly stated that he had no objection to jurors being used from the other departments.

2. CONTRIBUTORY NEGLIGENCE.

Citing *Di Mare* v. *Cresci* (1962) 58 Cal.2d 292 [23 Cal. Rptr. 772, 373 P.2d 860], holding that it is error to instruct on contributory negligence if there is no evidence to support a finding of contributory negligence, plaintiffs contend that there was no such evidence in this case, and hence that the court erred in instructing on the subject.

Rose Miraglia, 67 years of age, had been under the care of a physician for high blood pressure for some 20 years. Throughout this entire period she had taken various barbiturates and other sleep-inducing sedatives. By 1945 her blood pressure was very high and she manifested symptoms of arteriosclerosis and a hypertensive heart. At various times subsequent to 1945 until her death in 1959 she suffered chest pains and shortness of breath. In 1958 an electrocardiogram showed unmistakable signs of arteriosclerotic heart disease. Her condition continued to worsen.

On February 7, 1959, she entered the hospital pursuant to her doctor's orders, since he feared a coronary insufficiency. She was not in a critical condition but her doctor advised "usual precautions." This would include a restraining belt and side rails on the bed if the patient needed them. Her doctor prescribed an average dose of sedative to be given at bedtime for sleeping. The hospital records fail to disclose whether she was given a sedative within 22 hours prior to her falls. However, there was evidence from which an inference could be drawn that she received a sedative about 8 p.m. on the evening in question.

About 10:30 that night she attempted to crawl out of her bed. Before the woman who shared the room with her could summon the nurse, deceased had fallen to the floor. She explained that she thought she was at home and had intended to go to the bathroom. Bed rails were put up on the bed. They extended to within 16 inches of the end of the bed. A

doctor who examined her before she was returned to her bed testified that she did not look agitated nor did she complain of pain. An hour or so later the woman in the next bed heard her moving again and saw her ''scooting down'' the bed and called the nurses. They found her at the end of the bed, not yet in a sitting position. At this time and after her first fall, she was admonished not to attempt to get out of bed but to call a nurse. A buzzer was provided for this purpose. About 2:30 a.m. she was found on the floor beside the bed. On this fall her hip was broken. There was evidence from which it could be inferred that she was dazed from sedation. On the other hand, there was evidence that at all times she was alert and ''jolly.'' The evidence on this subject was conflicting and was resolved by the jury. Subsequent to the falls the fracture of the hip was repaired with surgery. She appeared to be recovering, but on the ninth day after her injury she suddenly died. The evidence as to whether her death resulted from her fall and hip fracture and the surgery connected therewith, or from a heart condition which would have caused her death had there been no fall and aftermath, was conflicting. Here again the jury resolved the conflict.

 Plaintiffs contend that there was negligence of the hospital and no negligence of deceased as a matter of law. Assuming, *arguendo*, that as a matter of law defendant was guilty of negligence, we cannot say as a matter of law that there was no evidence of contributory negligence. Plaintiffs' contention in this latter respect rests on the proposition that deceased's mind was so dulled by sedatives that she was incapable of contributory negligence. As hereinbefore stated, the evidence was conflicting as to deceased's condition in this respect. In view of that conflict it was for the jury to determine whether her mental condition was such that her conduct in falling out of a bed, which had side rails up on it, constituted contributory negligence. In view of the evidence it cannot be said as a matter of law what her mental condition was.

 Moreover, plaintiffs not only did not object to the giving of instructions on contributory negligence but they offered an instruction on the subject which the court gave.[6]

---

[6]This instruction reads: ''You are instructed that with respect to the allegation of contributory negligence on the part of the decedent, Rose Miraglia, the law provides that if a person is suffering from impaired faculties, then such person is bound to use that care which a person of ordinary prudence with faculties so impaired would use under the same circumstances.''

Also, the court gave an instruction offered by plaintiffs to the effect that the law presumed that deceased at the time of the accident was exercising ordinary care. This instruction was in effect an instruction on contributory negligence.

Applicable here is the following language from *Hazelett* v. *Miller* (1953) 115 Cal.App.2d 801, 805 [252 P.2d 997] : ''No prejudicial error resulted. Plaintiffs may not now be heard to complain about the giving of a general instruction offered by defendant in reference to contributory negligence of one or more of plaintiffs, under the evidence here produced, particularly where plaintiffs offered and the court gave plaintiffs' instruction offered by them on the same subject. [Citations.]''

*Fuentes* v. *Panella* (1953) 120 Cal.App.2d 175, 182 [260 P.2d 853], stated: ''It is well settled law that where a litigant invites error by offering instructions on a certain issue, he is in no legal position to complain that it was error to give instructions offered by the adversary, or given by the court on its own motion, on the same issue. The doctrine of invited error applies to such a situation. [Citations.]''

The court did not err in instructing on contributory negligence.[7]

The judgment is affirmed.

Sullivan, J., and Taylor, J.,* concurred.

A petition for a rehearing was denied May 5, 1964 and appellants' petition for a hearing by the Supreme Court was denied June 3, 1964.

---

[7]No contention is made that the instructions on this subject were erroneous in form.

*Assigned by Chairman of Judicial Council.